# THE STARR BURYING GROUND ASSOCIATION *vs.* THE NORTH LANE CEMETERY ASSOCIATION.

Second Judicial District, Norwich, April Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Land taken for one public use may be condemned, when necessary, for a different or inconsistent public use; but a statute authorizing the condemnation of land will not be construed as applicable to land already devoted to public use, except in clear cases.

It is within the constitutional power of the General Assembly to authorize an incorporated burying-ground association maintaining an ancient cemetery to enlarge its existing grounds, and for that purpose to take by condemnation adjoining land of another recently organized cemetery association which does not, under such ownership, effectually serve the public use for which it was acquired; and this is especially true where, as in the present case, the defendant association was organized and the land in question formally conveyed to it, in order to prevent such land from being taken by the plaintiff for actual public use.

By a Special Act passed in 1899 (13 Special Laws, p. 321) the plaintiff was authorized to apply to the Superior Court, pursuant to General Statutes, § 4115, and to take such portion of the land of the defendant as said court should find necessary for the enlargement of its burying-ground; provided, however, such court should find that the defendant was organized with intent to prevent the plaintiff from securing an enlargement of its burial grounds under the general law (§ 4115), and not to carry out the declared purposes of its organization. *Held :—*

1. That the Act did not provide for a forfeiture of the defendant's franchise and the distribution of its property, as claimed by the

defendant, but was a constitutional exercise of legislative power and gave the plaintiff the right to condemn the defendant's land upon complying with the conditions and procedure therein prescribed.

2. That the Act was not an amendment of the plaintiff's charter within the meaning of General Statutes, § 3315, requiring alterations or amendments of charters to be accepted within six months in order to become operative.

The purpose to maintain a burying-ground acquired by condemnation necessarily involves the purpose to maintain a public burying-ground for public use.

It is true, as a general proposition, that the admissions of individuals affecting the interests of a corporation of which they are members, cannot have the effect of an admission by the corporation. But where it becomes material to show the real purpose or intent in organizing a voluntary association or corporation, the declarations of some of its organizers and members, against their interest, are admissible, at least as against them, to show their purpose in joining in the formation of the association or corporation.

Where evidence is admissible as against some of the parties in interest, a general objection to it is insufficient.

Argued April 27th—decided July 1st, 1904.

ACTION to condemn certain land for the enlargement of a cemetery, and for an adjudication that the defendant was not organized in good faith but to prevent the plaintiff from acquiring said land, brought to the Superior Court in New London County where a demurrer to the complaint was overruled (*Thayer, J.*) and the cause was afterwards tried to the court, *Ralph Wheeler, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

*Abel P. Tanner* and *Christopher L. Avery*, for the appellant (defendant).

*Hadlai A. Hull*, for the appellee (plaintiff).

HAMERSLEY, J. From very early times towns, ecclesiastical societies and school societies have acquired and dedicated land for a public burying-ground. Individuals or voluntary associations have used their own land for the pur-

poses of a burying-ground, sometimes for private use of the owners and sometimes for the use of the public.   In 1841 a statute was passed authorizing individuals in any town to associate for the purpose of procuring and establishing a burying-ground which might be either for public or private use, and further providing that being so associated the association might become a corporate body upon filing a prescribed certificate. · This statute has since remained in force and may be found in § 1868 of the Revision of 1888. In 1849 the legislature provided that any association formed according to the provisions of the Act of 1841, as well as any town, ecclesiastical society, or school society, wishing to enlarge the limits of its burying-ground, and unable to agree with the owner of the land proposed to be taken for that purpose, might apply to the court for condemnation of the land in the manner prescribed.   Comp. of 1854, pp. 223–225. This legislation has since remained in force, but was subsequently enlarged by giving the right to apply for condemnation to any owner of a burying-ground or cemetery, and, as thus enlarged, may be found in § 1871 of the Revision of 1888. Land so condemned must be held by the owner as a public burying-ground for public use.   General Statutes (Rev. 1888), § 1873.

The plaintiff is an association formed and incorporated in 1857, in pursuance of the statute of 1841, and has since maintained an ancient burying-ground, enlarged at different times through the purchase of adjoining land.   In 1897 the plaintiff association found it necessary and desired to enlarge its burying-ground by adding thereto· the adjoining land of John J. Copp.   It passed the necessary votes for obtaining this enlargement through purchase or condemnation.   In 1898 the plaintiff attempted to agree with said Copp for the purchase of said land.   The negotiation was postponed, to be renewed at a meeting of the parties at a time agreed upon.   Before this time arrived said Copp, on May 25th, 1898, with his two brothers, formed an association called the North Lane Cemetery Association for the declared purpose of establishing and permanently maintain-

ing a cemetery for the burial of the dead and of procuring land for that purpose, and on the same day John J. Copp conveyed to the association the land required for the enlargement of the plaintiff's burying-ground, for the purchase of which negotiations between him and the plaintiff were then pending. On the day following this conveyance a certified copy of the articles of association was filed with the secretary of this State for the purpose of acquiring corporate powers. In December of the same year the plaintiff corporation voted to apply to the legislature for authority to condemn a portion of this land so conveyed by John J. Copp To the North Lane Cemetery Association, and did apply for such authority. Of this application the defendant had notice, and a hearing was had before the legislature. On May 25th, 1899, the legislature passed the following Act :—

"*Resolved by this Assembly :* That The Starr Burying Ground Association of Groton may make application in accordance with the provisions of section 1871 of the general statutes to take and may take such portion of the land now held or owned by The North Lane Cemetery Association as the superior court, before which said application shall be made, shall, by its own investigation or through its committee, find, upon proper allegations to that effect, is necessary and proper ; provided, that the superior court before which such application shall be made shall find, by its own investigation or through its committee, that The North Lane Cemetery Association was organized with intent to prevent The Starr Burying Ground Association from securing an enlargement of its limits under the provisions of section 1871 of the general statutes, and that said North Lane Cemetery Association was not organized for the purpose of carrying out the declared purposes of its organization."

The plaintiff being unable to agree with the defendant as to the purchase of the land required, brought this application to the Superior Court alleging, among other things, that the plaintiff's burying-ground is maintained as a public burial ground, and asking the condemnation of the land described for the enlargement of that burial ground and for the

uses of a public burying-ground. The defendant filed a demurrer to the application, which was overruled by the court. The defendant then answered, admitting the ownership of the land described, and denying the other material allegations of the application, and also alleging that the defendant is a cemetery association and since June 1st, 1898, has been the owner of a public cemetery; that the land mentioned is now held and appropriated by the defendant to the uses of a public cemetery, and better serves this public use while in the possession of the defendant than it would if controlled by the plaintiff. These allegations were denied by the plaintiff. The case was heard and determined by the court and judgment rendered for condemnation of the land. The defendant claims that the court erred in overruling the demurrer, as well as in overruling various claims of law made upon the trial, and in the admission of certain testimony.

The burial or other safe disposition of the dead is a necessity essential to the preservation of the health of the living. The private use of land for this purpose by a private corporation may be of public convenience and necessity, as that term is sometimes used, although not strictly a public use justifying condemnation of land for that purpose. *Application of St. Bernards Cemetery Asso.*, 58 Conn. 91, 92. But where land is appropriated for a burying-ground by a town or other municipal corporation, or by owners of the land—being a voluntary association or private corporation—and the land so appropriated is open, under reasonable regulations, to the use of the public for the burial of the dead, it may become a public burial ground and its use a public use, and the legislature may lawfully condemn land for that public use. *Edwards* v. *Stonington Cemetery Asso.*, 20 Conn. 466; *Evergreen Cemetery Asso.* v. *New Haven*, 43 id. 234; *Evergreen Cemetery Asso.* v. *Beecher*, 53 id. 551. Unless allowed in certain private charters, the State has not seen fit to authorize condemnation of land for this public use except in cases where the land is needed for the enlargement of an existing burying-ground.

Land held and used for a public use when needed for a different or inconsistent public use may be condemned for the latter use, but a statute authorizing the condemnation of land will not be construed as applying to land already devoted to public use, unless such application is clearly covered by the statute. *Evergreen Cemetery Asso.* v. *New Haven,* 43 Conn. 234, 241. For the same reason, land acquired for a public use, when on account of its particular ownership it does not at all or effectually serve that use, may be condemned for the same public use ; *a fortiori* is this true when the original acquirement for public use is one in form only, intended to prevent the actual appropriation of the land to that public use ; and this proposition is consistent with the proposition that a condemnation of land actually appropriated to and fully serving a public use, for the same use by a different owner, may be a condemnation only in form, and in reality and substance a mere compulsory transfer of the property of one private owner to another private owner, and for this reason may exceed the limits of legislative power. It follows, therefore, that the legislature, upon the facts as they appear in the record, may lawfully condemn the defendant's land for the enlargement of the plaintiff's cemetery. The question is one of authority : Has the legislature authorized such condemnation ?

This proceeding is in pursuance of § 1871 (Rev. 1888) and the Special Act of 1899 (13 Special Laws, p. 321). The Act of 1899 specifically authorizes the Starr Burying Ground Association to " take such portion of the land now held or owned by the North Lane Cemetery Association " as the court shall, by its own investigation or through its committee, find upon proper allegations to that effect is necessary and proper, and specifically provides that the application to the court to take the land may be in accordance with the provisions of § 1871 of the General Statutes. Read in connection with the existing law referred to in the Act, we think the Act authorizes the plaintiff to take for the enlargement of its cemetery the land of the defendant for public use as a public burying-ground and prescribes the mode of procedure

by application to the Superior Court, authorizing the court by its own investigation or through its committee to determine the questions of public necessity and just compensation. Whether or not § 1871, in a proceeding brought only on that section, requires the court to refer, in the first instance, the questions of public necessity and compensation to a committee, it is reasonably clear that in this proceeding, specially authorized by the Act of 1899, the court may determine the question of compensation as well as that of public necessity either by its own investigation or through its committee. It is doubtless true that the legislature authorized this special condemnation through this special proceeding because it thought that § 1871 did not authorize the plaintiff to take the land of the defendant, or because it deemed such authority doubtful. Possibly this opinion may not be well founded, but such mistake, if it be one, is not material. It is sufficient that the legislature has decided that a special proceeding for taking this particular land is necessary and has prescribed the manner of proceeding. The power to take is not, however, absolute, but dependent upon a judicial finding that the land authorized to be taken was not in fact acquired by the defendant for the purpose of establishing and permanently maintaining a burial ground, and so the court, before condemning the land, is required to find that the defendant association was organized to prevent an enlargement of the plaintiff's cemetery under existing provisions of law, and was not organized for the purpose of carrying out the declared purposes of its organization, viz., establishing and permanently maintaining a cemetery for the burial of the dead and to procure land for that purpose. Whether or not the legislature might itself have finally determined these questions, it certainly is allowable and proper to limit this special authority to take this particular land by such a condition.

We are satisfied that the Act of 1899, in connection with § 1871, authorized the plaintiff to take the defendant's land mentioned for a public use, and prescribed the mode of proceeding for its condemnation; that the mode of proceeding

prescribed meets all constitutional requirements in respect
to taking land for public use, and has been followed by the
plaintiff in its application and by the court in reaching its
judgment.

The defendant, however, claims that, assuming the Act
of 1899 to authorize these proceedings, the judgment is
wrong because the act is unconstitutional, and this claim is
the main reason specified in the defendant's demurrer, which
the trial court overruled.  The specifications of the demurrer
are insufficient.  The Act does not provide for a forfeiture
of the defendant's corporate franchise and distribution of
its property, as claimed by the defendant; it simply author-
izes a condemnation of the defendant's property for a pub-
lic use.  The power of the legislature to authorize, by a
Special Act, the condemnation of particular property for a
particular public use, is not open to question.  It is not
essential to the validity of the Act that the person who con-
veyed the land to the defendant should be made a party to
the proceeding, as if he still owned the land.  The provisions
of the Act clearly require all the steps necessary to render
the proceeding for condemnation due process of law.  The
Act does not authorize the taking of private property for pri-
vate use, nor is it invalid merely because it takes property
belonging to a cemetery association, for the reasons already
given.

The application was not demurrable because in alleging
the necessity for taking the land and the desire to take it,
it does not specify particular corporate votes to this effect.

In the reasons of appeal the defendant states that upon
trial it claimed the Act to be invalid as violating the pro-
visions of our Declaration of Rights securing equality be-
fore the law, and prohibiting gratuities or monopolies.  The
court properly overruled this claim.  *Norwich Gas & Electric
Co.* v. *Norwich,* 76 Conn. 565.

The defendant further claimed that no effect could be
given to the Act of 1899, because the plaintiff corporation
had not by vote accepted the act within six months of its
passage, as provided in § 1911 of the Revision of 1888.  The

Act is plainly not an amendment to a charter within the operation of that section. If it were material for the court to find that the plaintiff association was organized for the purpose of maintaining a public burying-ground for public use, that purpose was sufficiently indicated in the plaintiff's articles of association, which declare the purpose of the association to be the care and maintenance of an ancient burying-ground and of enlargements of said ground acquired by condemnation as well as by purchase. The purpose to maintain a burying-ground acquired by condemnation necessarily involves the purpose to maintain a public burying-ground for public use. If it were material for the court to find that the plaintiff association was the owner of land which at the time of its application was in fact devoted to the public use of a public burying-ground, the court has found this fact and there is nothing in the evidential facts appearing in the finding which necessarily make this conclusion an unlawful one. The court has found all the facts necessary to support its judgment. The defendant assigns errors in reaching these conclusions, some of them admittedly of minor importance as affecting questions of practice. We do not think any of these claims justify further discussion. It is sufficient to say that we discover nothing in the finding to indicate that in reaching its material conclusions of fact the court has applied any erroneous principle of law, or that the evidential facts found are necessarily inconsistent with the conclusions reached.

There remain for consideration the questions of evidence. Upon the trial the witness Hull was permitted, against the objections of the defendant, to testify to certain declarations made by J. J. Copp—who conveyed the land in question to the defendant association and who was its secretary and treasurer —and by his brother, Belton A. Copp, president of the defendant association, as to their purpose in organizing the association; J. J. and B. A. Copp, with their brother William Copp, being the only persons who organized the association and its only members. It is now urged that the purpose or intention of a corporation is properly shown by its charter and cor-

porate votes, and that an admission made by the members of a corporation in respect to its purpose or intention cannot be shown in a suit against a corporation, because it is the admission of natural persons not parties to the suit and not of the entity consisting of those natural persons which is the party. This distinction between a corporation as being an impalpable entity, and a corporation as being the living persons of whom it consists, is, for many purposes, a substantial distinction necessarily involved in the creation and use of corporations; but for some purposes it is not only a fiction but a useless and unreasonable fiction; and it is a settled principle that in certain cases where the fiction can serve no purpose but to accomplish injustice and to screen the corporation from the just consequences of its wrongs, the court will not permit this legal fiction to prevail against real substance. It is certainly true, as a general proposition, that the admissions of individuals affecting the interests of a corporation of which they are members cannot have the affect of an admission by the corporation. But the distinction between the interest of the corporate entity and that of the corporate members may become a difficult one to draw in certain kinds of corporations, and this is especially true of one like the defendant. In speaking of a similar corporation, we have said: "It is impossible to separate the interest of the individual members, in such a corporation as this, from the interest of the corporation itself." *Edwards* v. *Stonington Cemetery Asso.*, 20 Conn. 466, 478. If this evidence were material only as tending to show a corporate purpose, we are not prepared to say that the admission of the organizers and members of the corporation, as to their purpose in organizing it, must be excluded because the corporate entity is the party to the suit. It is not, however, necessary to determine this question. The testimony was material and admissible for other purposes than to prove a technical corporate intention. This proceeding is one to condemn a particular piece of land owned by the defendant association. It is immaterial whether the defendant is a voluntary association or a corporation. In either case the

legislature had the power, and has exercised the power, to authorize the condemnation. It may be that under the authority given the court must find that the land is not in fact used as a public burial ground. This fact the court has properly found; but the authority to condemn is limited by the further and, so far as the power of the legislature is concerned, unnecessary condition that the court shall satisfy itself that the defendant association was organized with a certain intent, and was not organized for a certain purpose. The defendant association was organized as a cemetery association when its articles were signed by the three Copp brothers. The intention and purpose the court has to find is that involved in this act of the Copp brothers. After this association was organized, it might become incorporated by taking the steps prescribed by the statute; but before such incorporation it was a voluntary cemetery association capable of carrying out its purposes and acquiring property, and it appears by the record that the land in question was conveyed by J. J. Copp while the defendant was a voluntary association and before it became a corporation. This proceeding is instituted, as it properly may be under the authority given, against the North Lane Cemetery Association as a voluntary association as well as a corporation. For the purposes of the proceeding it is immaterial whether the steps necessary to constitute the defendant a corporation have been properly taken or not. As tending to prove that the North Lane Cemetery Association, whether or not it remained a voluntary association or subsequently became a corporation, was organized by the three Copp brothers with the intent and purpose designated, the declarations of each against his interest would be admissible against him to show his purpose in joining in the formation of the association. The objection taken to the reception of these declarations was, in each instance, a general one. It was that they were not admissible at all; not that they were not admissible as against any of the parties in interest other than the person who made them. This general objection was properly overruled.

The testimony of the witness Hull as to his negotiations on behalf of the plaintiff with the president, secretary and treasurer of the defendant association for the purpose of reaching an agreement as to the acquirement of the land in question by purchase, was properly admitted.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.