## THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY *vs.* CHARLES K. OFFIELD.

Third Judicial District, Bridgeport, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

It has become the settled policy of this State, evidenced by a long course of legislation, to allow the consolidation of connecting railroad lines.

Judicious economy in railroad construction promotes the public interest, as well as the public use which the railroad will serve, by tending to lessen the rates of fare and freight.

The determination of the legislature that the uses to be furthered by certain condemnation proceedings are public, while not absolutely conclusive upon the judicial department, is entitled to very great weight.

Any kind of property, including shares of corporate stock, may be taken for public use, upon making just compensation therefor.

General Statutes, § 3694, authorizes any railroad company which may have acquired more than three fourths of the capital stock of any other railroad company, to take the outstanding stock by condemnation proceedings, if necessary, upon a judicial finding that such an acquisition will be for the public interest. *Held* that the stat-

ute did not confer exclusive privileges upon any set of men in violation of the Constitution of this State, that it did not deprive the stockholder of his property without due process of law, nor did it impair the obligation of a contract.

The plaintiff had acquired all of the capital stock of the New Haven and Derby Railroad Company, except two shares owned by the defendant which it now sought to condemn. *Held* that under its charter (10 Special Laws, p. 1298, 13 id. p. 41) the plaintiff's acquisition of these two shares would *ipso facto* work a merger, and preclude any possibility of their being sold or otherwise applied to a private use.

Every railroad is charged with a public trust, and the State can exercise the power of eminent domain so far as may be necessary to secure its being put to the best use in fulfilment of the trust.

Argued November 1st—decided December 16th, 1904.

ACTION to condemn two shares of the capital stock of the New Haven and Derby Railroad Company owned by the defendant, brought to and reserved by *Hon. Edwin B. Gager*, a judge of the Superior Court, upon a demurrer to the complaint, for the advice of this court. *Superior Court is advised to overrule demurrer*.

*Charles K. Bush* and *Edward H. Rogers*, for the defendant.

*George D. Watrous* and *Henry H. Townshend*, for the plaintiff.

BALDWIN, J. For many years any railroad company of this State has had a statutory right to take a lease of the property or franchises of, or to lease its own property or franchises to, any other such company, with whose tracks its own may connect, and no limitation has been prescribed as to the term of the lease, provided it should be approved by a two-thirds vote of the stockholders in each. General Statutes, §§ 3702, 3703. In 1889 and 1899 the plaintiff was empowered to increase its capital stock until the year 1910, for the purpose of exchanging shares of it (on terms to be approved by a committee consisting of two officers of the State and a lawyer to be appointed by the Governor) for

shares in the capital stock of any railroad company whose road it might be holding under a lease running for not less than fifty years, or of buying such shares. Until the entire capital stock of any such leased line should be so obtained, such shares as might be obtained were to remain in the plaintiff's control " as its property, the said stock to be used for all purposes of income, corporate organization, management, and franchise ; but for all other purposes, including purposes of taxation, it shall be deemed to be transferred to and merged into the stock of the New York, New Haven and Hartford Railroad Company, subject, nevertheless, to the right of any proper court to control the undue exercise of such power of voting on said stock for the protection of other stockholders." Should it " retire all of the capital stock of any such leased line, by purchase or exchange, the executive officers of said respective companies shall certify the same by certificate to be filed in the office of the state secretary, and the said stock of said leased line and all its franchises shall thereupon be and be deemed to be forever transferred to and merged in the stock and franchises of said New York, New Haven and Hartford Railroad Company." 10 Special Laws, p. 1298 ; 13 id. p. 41.

Pursuant to the powers thus granted, the plaintiff has taken a lease of the New Haven and Derby Railroad for ninety-nine years from July 1st, 1892, at a net rental of four per cent. a year on its capital stock, and has acquired 4,468 shares of its capital stock, which is divided into 4,470 shares of the par value of $100 each. The leased railroad has a mileage of less than seventeen miles, and a funded indebtedness of $1,280,000. It connects at New Haven, on the east, with four, and at its western terminals, with two, important railroad lines owned by the plaintiff, and forms a link in an all-rail route between Boston and the West which is the only one controlled by the plaintiff, and the only one of any kind controlled by it over which goods can be transported with assured dispatch in all weathers and at all seasons. To develop this route so as best to serve the public interest requires the laying of additional tracks on the New Haven and

Derby Railroad, and other extensive and very costly improvements. The lessor company has neither means nor credit whereby this can be effected on advantageous terms. The plaintiff could and will effect it, and at much less cost, if it can acquire the two outstanding shares of the stock of the lessee. They are owned by the defendant, who refuses to agree on terms of purchase.

It has become the settled policy of this State, evidenced by a long course of legislation, to allow the consolidation of connecting railroad properties under one management. It is for the public interest that railroads should be built in such a manner as to make them most useful to the public. When, to attain that end, large expenditures must be made, it is for the public interest that the requisite funds should be secured by those making the outlay and operating the railroad, on such terms and conditions as to impose upon them no unnecessary burden, for whatever that burden is, its weight, by increasing the fixed charges which they must meet, is apt ultimately to fall upon those traveling or forwarding goods over the railroad.

The plaintiff's railroad is a great highway for public use. Every improvement upon it furthers the public use, and the more economically it is made, provided it be well made, the more is such use promoted, because it will cost the public less. The charges for railroad transportation must always be reasonable, but in determining what is reasonable, the actual expense of construction is a legitimate subject of consideration. The record shows the credit of the New Haven and Derby Railroad Company to be such that if it could provide the means for the projected improvement of its property at all, it must be by contracting loans at a higher rate of interest than would be paid by the plaintiff for similar assistance. This being so, the public interest would be better served by having the plaintiff do the work. That it is a necessary work in order to make the railroad of the greatest service to the public is admitted by the demurrer. It will therefore promote the use for which the line was originally constructed. Whatever in the nature of a

property interest stands in the way of such promotion the State can put aside. Any kind of property can be taken for public use on making just compensation. The whole franchise of a corporation may be so taken. *Enfield Toll Bridge Co.* v. *Hartford & N. H. R. Co.*, 17 Conn. 40, 454; *Greenwood* v. *Freight Co.*, 105 U. S. 13, 22. Its whole property may be likewise taken. *Bigelow* v. *Union Freight R. Co.*, 137 Mass. 478. Shares of stock represent an undivided interest in such franchises and property, and for the same reason can be taken, if to take them seems to the State necessary in furtherance of public uses. *Black* v. *Delaware & R. C. Co.*, 22 N. J. Eq. 130 ; 24 id. 455, 468, 484. That the uses to be furthered are public, is a question the decision of which by the legislative department, while not absolutely conclusive upon the judicial department, on a proceeding like the present, is entitled to very great weight. *New York, N. H. & H. R. Co.* v. *Long*, 69 Conn. 424, 436.

That to take property for the construction of a railroad by a private corporation is to take it for a public use is firmly settled. It is so taken because the public benefit will be promoted by such a railroad. *Bradley* v. *New York & N. H. R. Co.*, 21 Conn. 294, 305. In like manner it may be promoted by improving such a railroad and making it more useful. By taking the defendant's shares of stock the New Haven and Derby Railroad Company, which now survives as a mere shell, will become dissolved, and its franchise will be merged in that of the plaintiff. The General Assembly did not transgress their power in authorizing condemnation proceedings when necessary, to brush such a ghost of a corporation out of existence. Its survival can serve no useful purpose : its extinction may facilitate and lessen the cost of the construction and improvements necessary to make the railroad of which it is now the owner fulfil its office to the best effect. *Starr Burying Ground Asso.* v. *North Lane Cemetery Asso.*, 77 Conn. 83, 88. Under the circumstances of this case, the condemnation of the defendant's two shares of stock is in substance and effect a condemnation of the franchise and property of the com-

pany for a public use which it has ceased to serve efficiently.

It is contended that if the plaintiff is allowed to take the defendant's shares, it becomes their absolute owner and may sell them as such to private purchasers. Whether such a claim would be entitled to any regard, were the defendant's shares not the only ones now outstanding, we need not inquire. Their acquisition, under the terms of the plaintiff's charter, will *ipso facto* work a merger, and preclude any possibility of their being applied to a private use.

It is further argued that the statutory permission to maintain an application of this nature is a grant to a set of men of exclusive privileges from the community, and so in violation of our Constitution. Art. 1, § 1. The statute is for the benefit of all railroads to which its terms may apply. Railroad companies constitute a peculiar class of artificial persons which can properly be invested with special privileges of a kind calculated to promote the public good. *Drouin* v. *Boston & M. R. Co.*, 74 Vt. 343, 52 Atlantic Rep. 957.

Nor will the defendant be deprived of property without due process of law. This proceeding is due process. *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 18 How. (U. S.) 272.

The claim that the statute impairs the obligation of a contract is equally groundless. When the defendant acquired his shares, he became a member of a corporation charged with a public trust. It has acquired a railroad for public use. It has given a lease of it to the plaintiff, subject to the same trust, for public use. It is the right of the State to do whatever is necessary to secure its being put to the best use in fulfilment of the trust. *Gates* v. *Boston & N. Y. A. L. R. Co.*, 53 Conn. 333, 342.

Our advice is that the demurrer be overruled.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.