PAIGE L. HILAND ET AL. *v.* HOWARD S. IVES, HIGHWAY
COMMISSIONER, ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, JS.

Argued March 8—decided April 4, 1967

*Kimberly B. Cheney,* with whom, on the brief, was *Richard G. Bell,* for the appellants (plaintiffs).

*Jack Rubin,* assistant attorney general, with whom, on the brief, was *Harold M. Mulvey,* attorney general, for the appellees (defendants).

KING, C. J.  Hubbard Park, situated partly in the city of Meriden and partly in the town of Southington, is owned by the city of Meriden.  It is composed of land which, between 1898 and 1901, was acquired by the city, to be used for park purposes, by gift, purchase or devise, although none of the conveyances contained a reverter provision.

The city, through its court of common council, accepted and dedicated the property as a public park to be known and designated as Hubbard Park.  Thereafter, by No. 5 of the 1899 Special Acts of

Connecticut (13 Spec. Laws No. 5, effective February 21, 1899), the charter of the city was amended to confirm and ratify the action of the common council in accepting and dedicating property as a public park, to create a board of park commissioners, and to authorize the city to own lands and structures for a public park or parks "within or without the corporate limits" of the city. There can be no question that the city of Meriden was authorized by the General Assembly to establish, maintain and conduct the Hubbard Park property as a public park under the rule of cases such as *Baker* v. *Norwalk,* 152 Conn. 312, 315, 206 A.2d 428. See also note, 144 A.L.R. 486, supplementing prior annotations.

The defendant highway commissioner, hereinafter referred to as the defendant, intends to take about forty-seven acres of the total park acreage of about 1200 acres for the relocation and improvement of a state highway known as route 6A. Funds for the purpose were appropriated by the 1965 session of the General Assembly.

The basic claim of the plaintiffs is that the defendant lacks the statutory authority necessary for the taking of any part of Hubbard Park. Section 13a-73 of the General Statutes (Rev. to 1966) provides for the acquisition of land for state highways. Subdivision (b) of § 13a-73 provides that the highway commissioner "may take any land he finds necessary for the layout, alteration, extension, widening, change of grade or improvement of any state highway" and provides for the payment of just compensation for the taking. It is obvious that the language of the statute is broad enough to embrace land held by either a public or a private owner and whether devoted to a public or a private use. In other words, the statute contains a general

power of condemnation as distinguished from a specific power to condemn particular property.

Other statutory provisions, however, have imposed certain limitations on the apparent scope of § 13a-73. Thus, in subdivision (g) of that section there are certain further provisions which must be complied with if the property sought to be taken is owned by the state itself. In addition, § 7-131j of the General Statutes (Rev. to 1966) provides that "[i]f the state . . . takes any land, for highway . . . purposes, which is restricted to conservation or recreation use in accordance with an established open space program, . . . before the state takes such land for highway . . . purposes, it shall hold a public hearing". Section 7-131j further provides that the state shall not take the land "unless the governing body of the municipality in which the land is located has, by majority vote of all of its members, approved the proposed taking". There is a further provision that if within ninety days the governing body fails to give such approval, the state may apply to the Superior Court, which may order the taking if it finds "that no land other than the land proposed to be taken will serve the purpose of such taking".

There is no question under Connecticut law that the state has the inherent power of eminent domain, that this power extends to all property within its limits, at least unless the property is owned or used by the federal government, and that the state cannot permanently surrender this power. *New York, H. & N.R. Co.* v. *Boston, H. & E.R. Co.,* 36 Conn. 196, 198. This principle is universally accepted. *United States* v. *Carmack,* 329 U.S. 230, 237, 67 S. Ct. 252, 91 L. Ed. 209; 11 McQuillin, Municipal Corporations (3d Ed. Rev. 1964) § 32.02,

p. 267; 1 Nichols, Eminent Domain (3d Ed. Rev. 1964) § 1.141[3], p. 28. Also, where the highway commissioner acts under authority, for the benefit, and on behalf, of the sovereign state itself, as was the case here, his action is that of the state itself. *Colaluca* v. *Ives,* 150 Conn. 521, 526, 191 A.2d 340; *Winchester* v. *Cox,* 129 Conn. 106, 113, 26 A.2d 592; see also *Weaver* v. *Ives,* 152 Conn. 586, 590, 210 A.2d 661; *Murphy* v. *Ives,* 151 Conn. 259, 261, 196 A.2d 596; *Tuckel* v. *Argraves,* 148 Conn. 355, 357, 170 A.2d 895.

All notices required by General Statutes (Rev. to 1966) § 7-131j were given, all hearings required by that statute were held, and the proposed taking was thereafter approved by a majority vote of all the members of the common council of Meriden, which was the governing body of that city. The parties have assumed, and we think correctly, that Hubbard Park fell within the ambit of § 7-131j as an area "which is restricted to conservation or recreation use in accordance with an established open space program".

The fact that Hubbard Park was held for a public use under authority granted by the state, which was the case here, does not, of course, remove it from the state's sovereign power of eminent domain. *Weaver* v. *Ives,* supra; *Winchester* v. *Cox,* supra; *New York, N.H. & H.R. Co.* v. *Offield,* 77 Conn. 417, 421, 59 A. 510; s.c. 78 Conn. 1, 2, 60 A. 740, aff'd, 203 U.S. 372, 27 S. Ct. 72, 51 L. Ed. 231; *Starr Burying Ground Assn.* v. *North Lane Cemetery Assn.,* 77 Conn. 83, 88, 90, 58 A. 467; *Evergreen Cemetery Assn.* v. *New Haven,* 43 Conn. 234, 242; *New York, H. & N.R. Co.* v. *Boston, H. & E.R. Co.,* supra; note, 91 L. Ed. 221, 240 § V. The plaintiffs correctly agree that this is so.

The plaintiffs, although conceding that the paramount power of eminent domain is possessed by the sovereign state, and that it is to be exercised through authority granted by its General Assembly, claim that in this particular case the legislation is inadequate effectually to authorize an exercise of that power. This claim is basically a question of interpretation of the legislative grant of authority to exercise the right of eminent domain in the present case. The principal reason urged by the plaintiffs in support of their claim is that a general grant of the power of eminent domain does not confer the power to take land already devoted to a public use. This rule is one of statutory interpretation and is applicable when the condemnor is a municipal or private corporation to which the state has delegated a portion of its sovereign power of eminent domain. *Canzonetti* v. *New Britain,* 147 Conn. 478, 481, 162 A.2d 695; *Starr Burying Ground Assn.* v. *North Lane Cemetery Assn.,* supra; *Evergreen Cemetery Assn.* v. *New Haven,* supra, 241; note, 91 L. Ed. 221, 244 § VI, 250 § VI (c).

But the rule does not apply where the sovereign itself is the condemnor and is taking the property on its own behalf and for its own sovereign purposes. In 1 Nichols, op. cit. § 2.2, the distinction is well stated, as follows:

"In the determination of the question whether or not property already devoted to a public use can be subjected to the process of eminent domain the primary factor to be considered is the character of the condemnor.

"If the sovereign, such as the state or the United States on its own behalf and for its own sovereign purposes, seeks to acquire such property by eminent domain, the character of the 'res' as public property,

generally, has no inhibiting influence upon the exercise of the power.

"If, on the other hand, a condemnor to whom the power of eminent domain has been delegated, such as a municipality or a private corporation, seeks to exercise the power with respect to property already devoted to a public use, the general rule is that where the proposed use will either destroy such existing use or interfere with it to such an extent as is tantamount to destruction, the exercise of the power will be denied unless the legislature has authorized the acquisition either expressly or by necessary implication. Such an acquisition cannot be effected under a general delegation of the power of eminent domain from the legislature, unless it can be clearly inferred from the nature and situation of the proposed work, and from the impracticability of constructing it without encroaching on land already used by the public, that the legislature intended to authorize such property to be taken. The manner in which the property was originally acquired, whether by purchase, by eminent domain, or otherwise, has no bearing upon the operation of the general rule." See also note, 91 L. Ed. 221, 244 § VI (a), 250 § VI (c) ; 11 McQuillin, Municipal Corporations (3d Ed. Rev. 1964) § 32.72, p. 437.

The reason for the foregoing distinction in the applicable rules of statutory interpretation seems to be that it is not to be assumed, in the absence of a clear intention expressed or necessarily to be implied, that the sovereign, in delegating the power of eminent domain to a private or municipal corporation, intended to give the power to destroy a preexisting public use. But for this rule of statutory interpretation, one public use would be subject

to destruction for another such use, even though the use of condemnor and that of condemnee had each been authorized by the sovereign. In other words, the matter becomes a question of the legislative intention expressed in, or reasonably to be implied from, the statute conferring the power of eminent domain. *Evergreen Cemetery Assn.* v. *New Haven,* 43 Conn. 234, 242; note, 91 L. Ed. 221, 244 § VI (a), 250 § VI (c). It is true that state authority was necessary to permit Meriden to own and conduct Hubbard Park, that the park was held by Meriden for the benefit of the public as a whole, and that Meriden, although the owner of the fee of the land, was not free itself to sell the park property or otherwise to devote it to an inconsistent use. *Baker* v. *Norwalk,* 152 Conn. 312, 315, 206 A.2d 428. But the fact remains that Hubbard Park is not held by the sovereign, as such, on its own behalf and for its own sovereign purposes, as is a state highway. Rather, it is held by an inferior governmental corporate subdivision, although for an authorized public use.

Here no attempt is being made to take for highway purposes any property held by the sovereign on its own behalf and for its own sovereign purposes or any property held under the control of a commission created by the sovereign for a sovereign public purpose, as was the case, for instance, in *Commonwealth* v. *Massachusetts Turnpike Authority,* 346 Mass. 250, 252, 191 N.E.2d 481, a case on which the plaintiffs lay great stress. Obviously general authority to condemn may well be inadequate, as was held in that case, to express an intent by the sovereign to take for highway use other property which it owns and holds for flood control and other sovereign public purposes. That would be the

taking, by the sovereign, of its own land for another, and inconsistent, sovereign purpose. That case involved a determination of the legislative intent expressed in the language used in a Massachusetts highway condemnation statute. Id., 253. Here Hubbard Park was subject to state authority and control only to the extent that any other municipally owned and operated public park was so subjected under the rule of cases such as *Baker* v. *Norwalk,* supra. Hubbard Park was not owned or held by the state of Connecticut. If it were, there would be no occasion for a condemnation award, since the state would be taking its own land. Hubbard Park was owned and held by Meriden under authority given by the state. Indeed, to avoid the very situation which arose in *Commonwealth* v. *Massachusetts Turnpike Authority,* supra, General Statutes (Rev. to 1966) § 13a-73, our highway acquisition statute, in subdivision (g) contains an express provision restricting the taking, for state highway purposes, of "real property, the title to which is in the state of Connecticut and which is under the custody and control of any state department, commission or institution".

The power of condemnation given the highway commissioner is not a power delegated to a private or municipal corporation. Rather, it is an exercise of the sovereign power of condemnation by the state itself, on its own behalf, and for its own sovereign purposes, through its designated agent, the state highway commissioner. Thus, except for the necessity of compliance with General Statutes (Rev. to 1966) § 7-131j, the general power of condemnation was adequate to permit the taking of the Hubbard Park property. Indeed, if this were not so, § 7-131j would be without operative effect, at least as to

public parks, since it would constitute an attempt to place a limitation on a power of eminent domain which could not be exercised in any event because the power had not been effectually conferred.

The plaintiffs seem to place some reliance on General Statutes § 47-2, the statute of charitable uses, which provides that "[a]ll estates granted . . . for any . . . public and charitable use, shall forever remain to the uses to which they were granted, according to the true intent and meaning of the grantor, and to no other use whatever".

The fact that the Hubbard Park property had been accepted and dedicated as a public park did not impair the state's sovereign power to condemn the property. *United States* v. *Carmack,* 329 U.S. 230, 237, 67 S. Ct. 252, 91 L. Ed. 209; *Weaver* v. *Ives,* 152 Conn. 586, 590, 210 A.2d 661; *Winchester* v. *Cox,* 129 Conn. 106, 113, 26 A.2d 592. But, as conceded by the attorney general, the statute of charitable uses did operate to require Meriden to hold the proceeds of the condemnation award subject to substantially the same restriction as that placed on the lands by their dedication for park purposes. *Winchester* v. *Cox,* supra, 115. And under the provisions of § 3-125 of the General Statutes (Rev. to 1966), the attorney general is required to "represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes."

The plaintiffs claim that Meriden's disability itself to utilize the Hubbard Park property for an inconsistent use, public or private, precludes it from voluntarily relinquishing a portion of the park by the approval granted by its common council under General Statutes (Rev. to 1966) § 7-131j, as previ-

ously quoted. This argument is more ingenious than persuasive.

The state had the power to condemn this property regardless of its character or use. The state chose to condition its exercise of its power of condemnation on action by Meriden under § 7-131j, which expressly conferred authority on Meriden to approve the condemnation under the procedure set forth in that section. Granting such approval could not be treated as the equivalent of a voluntary sale or other diversion of the property by Meriden to an inconsistent use. Rather it was an approval, authorized by statute, of the state's exercise of its sovereign power of eminent domain, which the state possessed in any event. Furthermore, § 7-131j did not purport to authorize Meriden to convert the proceeds of the condemnation to an inconsistent use, public or private.

Moreover, § 7-131j applied not merely to Hubbard Park but equally to all other municipally owned public parks within the state, since all are subject to the rule of *Baker* v. *Norwalk,* 152 Conn. 312, 315, 206 A.2d 428. If Meriden could not act under § 7-131j, because of its disability itself to divert park property to another use, the same rule would apply to any other municipally owned public park, and the portion of § 7-131j now under discussion would be, as to public parks at least, a nullity. Such a construction would obviously defeat the legislative intent expressed in § 7-131j. Meriden cannot, as already pointed out, devote the condemnation proceeds to an inconsistent use, public or private, and will be required to hold the proceeds for a substantially similar public use. But this is the only effect the statute of charitable uses (§ 47-2) has on this case.

We conclude (1) that the words "any land" in § 13a-73 (b), where, as here, the provisions of § 7-131j have been complied with, are adequate to include land held by Meriden for public park purposes, (2) that the plaintiffs have failed to show any lack of authority in the highway commissioner to take the land in question for the improvement of route 6A, and (3) that the court below was not in error in so deciding.

We are not unmindful of the competing demands of one segment of the public for straight, level, multiple-lane, high-speed highways and of another segment of the public for the protection and enlargement of open-space areas devoted to park, recreational and conservation purposes. In a small, thickly settled state like Connecticut, modern high-speed highways cannot feasibly be constructed without frequently encountering property devoted to some public use. See cases such as *Riley* v. *State Highway Department*, 238 S.C. 19, 25, 118 S.E.2d 809. An attempt to reconcile the foregoing competing public demands obviously was made, at least as far as open-space areas are concerned, in the enactment of § 7-131j of the General Statutes (Rev. to 1966). If this statute does not strike a balance between these competing demands satisfactory to the citizens of this state, a change in the statute may readily be made by the General Assembly. Although the state cannot destroy or permanently surrender its sovereign power of condemnation, it may, in any given situation, for the time being at least, condition, as it pleases, its exercise of that power. 1 Nichols, Eminent Domain (3d Ed. Rev. 1964) § 1.141 [3].

There is no error.

In this opinion the other judges concurred.