CITY OF MERIDEN *v.* HOWARD S. IVES, STATE
HIGHWAY COMMISSIONER
(two cases)

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 14, 1973—decided January 23, 1974

*Albert L. Coles,* with whom was *Morton H. Green-blatt,* corporation counsel, for the appellant (plaintiff) in each case.

*William A. McQueeney,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellee (defendant) in each case.

BOGDANSKI, J.   Pursuant to a stipulation, these two cases arising out of the partial condemnation of two public parks maintained by the city of Meriden were briefed and argued together.   They are appeals from the action of the Hon. Patrick B. O'Sullivan, a state referee, who, exercising the powers of the Superior Court, rendered a deficiency judgment for the city in each case but refused to award severance damages.   The main issue presented by the assignment of errors is whether the referee erred in refusing to consider the existence of severance damages to the remaining parcels of parkland.

In June, 1968, the city of Meriden maintained two adjacent municipal parks, City Park, containing 9.23 acres, and Brookside Park, containing 13.3 acres. The highway commissioner, acting pursuant to § 13a-73 of the General Statutes, condemned two acres of City Park and 2.15 acres of Brookside Park, and assessed damages for the two parcels taken. The city appealed from these assessments to the Superior Court, where the matters were referred to the Hon. Patrick B. O'Sullivan, a state referee. The plaintiff and the defendant both offered evidence as to the damages sustained by the city, measured by the difference in value of the parkland before and after the taking.   In calculating the value

of the parcels retained by the city, the witnesses for both the plaintiff and the defendant included severance damages. The referee, however, refused to apply the "before and after" rule and instead assessed the value of the land actually taken. He awarded $95,000 as damages for the City Park taking, and $82,000 as damages for the Brookside Park taking.

The referee purported to base his determinations, in part, on the majority opinion in *Winchester* v. *Cox*, 129 Conn. 106, 26 A.2d 592, and on § 7-131j of the General Statutes. He concluded that municipal land restricted to park use has no monetary value because it has no market value, but that since any portion taken by the state is no longer restricted to park use, that portion does have a monetary value. He further concluded that there is no monetary damage to parkland not taken, since that land is still restricted to park use, and therefore refused to award severance damages.

Ordinarily, when land is taken in eminent domain proceedings, the owner is entitled to be paid just compensation. Conn. Const., art. 1, § 11. When the highway commissioner condemns land pursuant to General Statutes § 13a-73, he acts with the full authority of the state. *Hiland* v. *Ives,* 154 Conn. 683, 687, 228 A.2d 502. Section 13a-73 (b) also requires that the owner of land taken by the highway commissioner "shall be paid by the state for all damages."

If the taking is partial, the usual measure of damages "is the difference between the market value of the 'whole tract' as it lay before the taking and the market value of what remained of it thereafter." *Northeastern Gas Transmission Co.* v. *Ehrhorn,*

145 Conn. 83, 86, 139 A.2d 53; *Gontarz* v. *Berlin,* 154 Conn. 695, 697, 229 A.2d 29. In this way, any severance damages to the remaining tract are included. Thus, "when part only of a parcel of land is taken for a highway, the value of that part is not the sole measure of the compensation . . . to be paid to the owner; but the incidental injury or benefit to the part not taken is also to be considered. When the part not taken is left in such shape or condition as to be in itself of less value than before, the owner is entitled to additional damages on that account." *United States* v. *Dickinson,* 331 U.S. 745, 750, 67 S. Ct. 1382, 91 L. Ed. 1789, quoting from *Bauman* v. *Ross,* 167 U.S. 548, 574, 17 S. Ct. 966, 42 L. Ed. 270; see also *Connecticut Ry. & Lighting Co.* v. *Redevelopment Commission,* 161 Conn. 234, 239, 287 A.2d 362; *Hollister* v. *Cox,* 130 Conn. 389, 34 A.2d 633; 4A Nichols, Eminent Domain (3d Ed.) § 14.2. "Damage to the remainder area is generally measured by the depreciation in value of such remainder as a result of the taking. All damages, present or prospective, that are naturally or reasonably concomitant to the improvement to be made or the work to be constructed . . . must be assessed." 4A Nichols, op. cit. § 14.21.

Historically, a different rule has prevailed as to land held by a municipality and maintained for a public purpose. Where "property [is] held by a municipality in its governmental capacity, the legislature may in general exercise final authority over its use or disposition, and, if it decides to take land so held . . . for a public purpose, the municipality is ordinarily not entitled to compensation." *Winchester* v. *Cox,* 129 Conn. 106, 110, 26 A.2d 592; note, 56 A.L.R. 365; 4A Nichols, op. cit. § 14.24. A

municipality acts in its governmental capacity when it holds and maintains a public park. *Stradmore Development Corporation* v. *Board of Public Works,* 164 Conn. 548, 551, 324 A.2d 919; *Wysocki* v. *Derby,* 140 Conn. 173, 175, 98 A.2d 659; *Winchester* v. *Cox,* supra.

In *Winchester* v. *Cox,* supra, this court rejected the historical rule that no compensation is payable when the state condemns municipal parkland. There, the highway commissioner took portions of two public parks maintained by the town for the purpose of improving a trunk line highway (p. 108). When the highway commissioner awarded damages of one dollar, the town appealed to the Superior Court and the matter was referred to a state referee. The referee found that as public parkland, the land taken had no value to the town, and that the town, therefore, suffered no damage from the taking. He found, however, "that if the land were unrestricted as to its use the value of the tracts after the highway commissioner took a portion of them was reduced by $4800." *Winchester* v. *Cox,* supra, 109. The referee reached this figure by placing a value of $8100 on the two public parks before the taking, and a value of $3300 on the parkland retained by the town. A-173 Rec. & Briefs 447. The referee in *Winchester* thus followed the usual method of assessing damages for a partial taking of land. *Gontarz* v. *Berlin,* supra. The Superior Court, however, affirmed the award of one dollar in damages and the town appealed to this court.

This court held that under article 1, § 11, of the constitution of Connecticut, the state could not take municipal parkland without paying "just compensation," and that the nature of "just compensation"

was to be decided upon equitable principles. *Winchester* v. *Cox,* supra, 114. We approved the statement in *In re Widening of Bagley Avenue,* 248 Mich. 1, 5, 226 N.W. 688, to the effect that "[n]othing can be fairly termed just compensation which does not put the party injured in as good a condition as he would have been if the injury had not occurred." *Winchester* v. *Cox,* supra, 115. Noting "the outstanding fact" that the referee had found damages in the amount of $4800 "if the restriction to park uses be disregarded," we set aside the judgment and remanded the case with direction to render judgment in that amount. *Winchester* v. *Cox,* supra, 116–17. This money, we held, was to be used by the town "only for proper park purposes." *Winchester* v. *Cox,* supra, 115.

In *Winchester* v. *Cox,* supra, this court approved the use of the "before and after" method of measuring damages for a partial taking and disregarded the restriction to park uses in circumstances not materially different from those existing in the cases now before us. If the parklands which the town of Winchester retained were damaged by the partial takings, it follows that severance damages were included in the award along with compensation for the parcels actually taken. Such a result is logical and reasonable since no rational ground exists for awarding damages for the one type of taking but not for the other.

It is true that the issue of severance damages was not expressly raised in *Winchester* v. *Cox,* supra. Moreover, throughout that decision the court alternated between two different formulations of the requirement of compensation, payment of the value of the land taken, and complete restoration of the

injured party to his original condition. The ambiguity might suggest that *Winchester* required compensation only for the value of the land actually taken, but this construction of *Winchester* is belied by the fact that the court awarded damages as calculated by the referee, according to the "before and after" rule, and by the fact that the court did not see fit to retain a distinction between compensation for condemned public parkland and compensation for condemned private property.

In 1963 the General Assembly enacted General Statutes § 7-131j. This statute provides, in part, that "[i]f the state . . . takes any land, for highway or other purposes, which is restricted to conservation or recreation use in accordance with an established open space program, . . . the state . . . shall provide comparable land to be included in such program or shall grant or pay to the municipality sufficient funds to be used for such purpose." The referee found that City Park and Brookside Park were "restricted to conservation and recreation use in accordance with an established open space program," as are all other municipally owned public parks within the state. *Hiland* v. *Ives*, 154 Conn. 683, 693, 228 A.2d 502. Hence the provisions of § 7-131j apply to the takings in these cases. The referee found that the state had failed to comply with the first alternative set forth in the statute by providing comparable land and concluded that the state was therefore required to pay the plaintiff sufficient funds to acquire substitute parkland. The statutory provision is nothing more than the legislative enactment of the holding in *Winchester* v. *Cox*, supra, 115, that the state "make the town good so far as money could." Apart from its provision for

an alternative means of making just compensation, § 7-131j does not alter the rule of *Winchester.* Although the statute refers in terms only to compensation for land that is taken, it is not inconsistent with, and does not abrogate, the rule of *Winchester* that full compensation for the entire taking must be made.

The referee concluded that severance damages were nominal in any event, since lands restricted to park use have no market value. Although "market value is ordinarily the measure of compensation, . . . this is not necessarily so." *Winchester* v. *Cox, supra,* 114. Just compensation is an equitable, rather than a strictly legal concept. *Slavitt* v. *Ives,* 163 Conn. 198, 209, 303 A.2d 13; *Colaluca* v. *Ives,* 150 Conn. 521, 530, 191 A.2d 340. The market value test is inappropriate when public parkland is condemned. See note, 40 A.L.R.3d 143; note, "Just Condemnation and the Public Condemnee," 75 Yale L.J. 1053; 4A Nichols, Eminent Domain (3d Ed.) § 15.2 [1]. In *United States* v. *Certain Property in Manhattan,* 403 F.2d 800 (2d Cir.), involving the condemnation by the United States of a public bath and recreation center owned by the city of New York, the court said (pp. 802–3): "The principle of fair market value . . . should be abandoned 'when the nature of the property or its uses produce a wide discrepancy between the value of the property to the owner and the price at which it could be sold to anyone else.' . . . Frequently when public facilities are appropriated, the market value test is unworkable because these facilities are not commonly bought and sold in the open market, and seldom are operated for profit. . . . The result has been the development of the 'substitute facilities'

doctrine to meet the unique needs of public condemnees. . . . Simply stated, this rule insures that sufficient damages will be awarded to finance a replacement for the condemned facility." The substitute facilities doctrine is embodied in General Statutes § 7-131j.

There is no valid reason why the referee in the cases before us should have applied equitable principles of just compensation to the parkland which was taken but not to the parkland which was retained. The rule of damages which he applied is inconsistent with the "before and after" rule adopted by the majority in *Winchester* v. *Cox*, supra, and with the substitute facilities doctrine incorporated in General Statutes § 7-131j. Since § 7-131j adopts the substitute facilities method of valuing land without market value, the value of parkland before and after a taking must be computed by determining the cost of replacement with land and facilities which are comparable in all meaningful respects. The difference, an amount sufficient to replace all that is taken, and not just the portion of land condemned, is the amount of compensation to be paid.

There is error in part, the judgment is affirmed except as to the amount of damages awarded and a new trial is ordered limited to that issue.

In this opinion the other judges concurred.