THE NARRAGANSETT ELECTRIC LIGHTING COMPANY *vs.* GEORGE W. SABRE *et al.*

THE NARRAGANSETT COMPANY *vs.* THE NARRAGANSETT ELECTRIC LIGHTING COMPANY.

JUNE 28, 1929.

PRESENT: Stearns, C. J., Rathbun, Sweeney, and Barrows, JJ.

RATHBUN, J. We have for consideration two petitions in equity. In the Superior Court separate motions were made to dismiss each petition. Each motion raised upon the record constitutional questions which were certified to this court for determination. See Section 1, Chapter 348, General Laws 1923.

The Narragansett Electric Lighting Company, a public service corporation, purporting to act upon legislative authority, transferred all of its franchises and other assets to the United Electric Power Company, a public service corporation, the name of which has since been changed to The Narragansett Electric Company. We will hereafter refer to the first mentioned corporation as the old company and to the last mentioned corporation as the new company. The old company filed the first petition which prays (1) that

an appraiser be appointed to appraise the value of the stock owned in said company by stockholders who objected to said transfer.  (2) That a decree be entered ordering the petitioner, the old company, to pay such dissenting stockholders the appraised value of their shares.  The second petition which was filed by the Narragansett Company, a stockholder in the old company, prays for a dissolution of the old company.

Said motions to dismiss were filed by dissenting stockholders who contend that the acts purporting to transfer the assets of the old company to the new company, violated rights guaranteed to said stockholders by the Constitution of this State and the Constitution of the United States.

Before hearing, the petitioners filed in this court motions to dismiss the respondents' motions to dismiss the petitions. The ground for the petitioners' motions was that the respondents are not entitled to have their motions granted because they have been guilty of laches.  The motions of the petitioners are not in order.  The causes were certified here for determination of the question of the constitutionality of certain acts of the Legislature "as raised in said motion to dismiss."  The petitioners' motions to dismiss are denied.

A group of persons interested in merging certain public service corporations doing business within this State were granted by act of the General Assembly a charter for a corporation with the name "United Electric Power Company", which name was later changed to "The Narragansett Electric Company", which we have referred to as "the new company."  Section 3 of said act provides that the corporation may acquire the franchises and other property of the United Electric Railways Company, a corporation owning and operating street cars propelled by electricity.  Section 4 of the act provides that:

"The corporation hereby incorporated may sell to any other corporation or corporations organized under the laws of this state and authorized to carry on a similar business in this state, and said other corporation or corporations may

purchase and hold, all of the assets, property, rights, privileges and franchises of the corporation hereby incorporated, and any such other corporation or corporations may sell to the corporation hereby incorporated, and the corporation hereby incorporated may purchase and hold, all of the assets, property, rights, privileges and franchises of any such other corporation or corporations. Any such sale may be for such consideration, which may consist in whole or in part of stock, bonds, or other obligations of the purchasing corporations, as may be agreed upon by the parties to such sale. Any such sale shall be approved by vote of at least two-thirds in interest of the stockholders of the vendor corporation entitled to vote, at a meeting of the stockholders of such corporation duly called."

"Upon consummation of any such sale the purchasing corporation shall become vested with all the rights, privileges, powers and franchises held or enjoyed by the vendor corporation."

"If a sale be effected in accordance with the foregoing provisions hereof, any stockholder of the vendor corporation, who shall not have voted in favor of said sale either in person or by proxy, shall be entitled to the rights, and such vendor corporation shall be subject to the duties, obligations and liabilities set forth in section 56 of chapter 248 of the general laws with respect to dissenting stockholders and to corporations which sell, lease and exchange their entire assets, respectively."

An amendment to this act of incorporation, approved April 14, 1927, amended Section 5 of said act to read as follows:

"Sec. 5. The corporation hereby incorporated may lease, purchase, acquire, hold, possess, enjoy, operate, use and dispose of such real and personal estate, rights, privileges and franchises within this state as may be necessary or convenient for the purposes for which said corporation is organized and may issue its capital stock, bonds, and other obligations in payment or part payment therefor, in the manner and with the approval hereinafter provided. Whenever the corporation hereby incorporated shall have received from the Narragansett Electric Lighting Company a conveyance of all or substantially all of its assets, property, rights, privileges and franchises, which conveyance has been approved by vote of the holders of not less than two-thirds of its outstanding stock at a meeting called, notified and held in the manner prescribed in Section 4 of this act of incorporation, the corporation hereby incorporated may change its name to THE NARRAGANSETT ELECTRIC COMPANY; and by that name may hold, use, exercise and enjoy all the assets, property, rights, privileges and franchises of the corporation hereby incorporated and all the assets, property, rights, privileges and franchises of said Narragansett Electric Lighting Company so conveyed. Such change of name shall be authorized by a vote of the holders of not less than two-thirds of the outstanding stock of the corporation hereby incorporated, and shall become effective upon the filing with the Secretary of State of a certified copy of such vote and a certificate of the president or treasurer that all or substan-

tially all of the assets, property, rights, privileges and franchises of the Narragansett Electric Lighting Company have been so conveyed; provided, however, that nothing herein contained shall deprive any stockholder of the Narragansett Electric Lighting Company of any right secured to such stockholder under the third paragraph of section 4 of this act of incorporation or under section 56 of chapter 248 of the general laws in said section 4 referred to."

Said act of incorporation purports to authorize all corporations, "organized under the laws of this state and authorized to carry on a similar business in this state", to transfer for such consideration as may be agreed upon all franchises and other assets owned by such a corporation to the new company, provided such transfer "shall be approved by vote of at least two-thirds in interest of the stockholders of the vendor corporation." Section 5 as amended specifically mentions the old company and authorizes the new company to acquire and enjoy all of the franchises and other assets and property of the old company, provided the conveyance "has been approved by vote of the holders of not less than two-thirds" of the outstanding stock of the old company.

At a duly called meeting of the stockholders of the old company a proposal to exchange all of the assets of said company for a certain fixed price, to be paid chiefly in bonds and other securities of the new company, was approved by a vote of more than two-thirds in interest of the stockholders of the old company. Soon after said meeting the old company transferred for the consideration stated in said proposal all of its assets including franchises to the new company. It appears that the transfer has the approval of the stockholders holding more than ninety-nine per cent of the stock of the old company. The issues presented are raised by dissenting stockholders who make varying contentions but join in opposing the petition to have the value of their stock determined by appraisal, and paid for on that basis, and also object to the petition to dissolve the old company. They ask for no affirmative relief. The dissenting stockholders will hereafter be referred to as respondents.

The decrees of certification order the two causes certified to this court on the question of the constitutionality of said act of incorporation and the amendment thereto "as raised in said motion to dismiss". The reasons set forth in said motion may be summarized as follows: The said act of incorporation and the amendment thereto are unconstitutional, null and void in that, First: Said acts deprive the respondents of certain remedies in violation of Article I, Sections 5 and 10 of the Constitution of Rhode Island.

Second: Said acts permit the taking of private property for private use and the taking of private property for public use without just compensation in violation of Article I, Section 16 of the Constitution of Rhode Island.

Third: Said acts impair the obligation of contract between the State of Rhode Island and the Narragansett Electric Lighting Company and between said company and the respondents in violation of Article I, Section 10 of the Constitution of the United States and Article I, Section 12 of the Constitution of the State of Rhode Island.

Fourth: Said acts deprive the respondents of property without due process of law and deny them the equal protection of the laws in violation of Article XIV of the Amendments of the Constitution of the United States.

Fifth: Said acts purport to vest legislative and judicial power in the new company and in two-thirds of the stockholders in the old company.

Some of the respondents contend that the act of incorporation and the amendment thereto purport to authorize the taking of their stock by the exercise of eminent domain and that said act and amendment violate certain of the above specified constitutional provisions. Other respondents argue that the General Assembly, by passing said act and amendment, did not attempt to authorize a taking of their stock by eminent domain, but did attempt, by acting under the power reserved by the General Assembly to amend or repeal charters, to amend the charter of the old company to such an extent as to permit said company, on

the approval of two-thirds of the stockholders in interest, to sell or exchange the entire assets of said company in violation of the constitutional provisions above mentioned.

We think it is clear that the legislative intent, as expressed in said act and amendment, was to authorize a taking by eminent domain. The act of incorporation as amended should be read in connection with Section 56, Chapter 248, G. L. 1923, the terms of which section are by reference incorporated into and made a part of said act of incorporation and amendment. Said section is as follows:

"In case any corporation shall, in accordance with the provisions of section fifty-five hereof, sell, lease or exchange all or substantially all its property, assets and good will, every stockholder in such corporation who either in person or by duly authorized proxy shall have voted in favor of such sale, lease or exchange shall be deemed thereby to have consented to such sale, lease or exchange and shall be bound thereby so far as his shares in such corporation are concerned; and every stockholder who shall not have so voted shall be deemed to have objected to and dissented from such sale, lease or exchange; and such corporation shall, as soon as may be after the date of the delivery of the instrument of transfer, lease or exchange, file a petition in equity in the superior court sitting in or for the county where the corporation filing the petition is located, against all such dissenting stockholders for the appointment of an appraiser to ascertain the full and fair value of their shares and for the entry of a decree ordering the corporation to pay to such dissenting stockholders the value of their shares so found. Notice of said petition shall be given by citation to dissenting stockholders residing within this state and shall be served in the same manner as are subpoenas in equity, at least ten days before the return day. Notice either by publication or otherwise shall be given to all other dissenting stockholders in such manner as the court having jurisdiction shall determine. Upon the return day of the citation or on such later day to which said petition may be referred, the court shall appoint some disinterested person to appraise the full and fair value of the shares of the dissenting stockholders without appreciation or depreciation on account of such sale, lease or exchange. Said appraiser shall first be sworn to the faithful and impartial discharge of his duties and shall then proceed to hear said parties and their witnesses with the same powers and according to the same rules as are vested in and bind a master in chancery, and shall as speedily as may be report to the court. In case the said petition is not filed by said corporation within thirty days after the date of the delivery of the instrument of transfer, lease or exchange, as the case may be, any dissenting stockholder may file such a petition for his own benefit and the benefit of all other dissenting stockholders, making said corporation a party respondent, and a petition so filed shall have the same effect and shall proceed in the same manner as if the same were filed by said corporation. Any interested party may except to the

appraiser's report, and such exception shall be heard by the superior court, which shall enter such decree as the circumstances may require. Any interested party may, within ten days after the entry of the court's decree on said report, appeal therefrom to the supreme court. Such appeal shall be subject to the same rules as are appeals in equity. When said decree shall have become final, the court making the same shall issue execution thereon in the same manner as executions are issued in equity. Said corporation shall pay the appraiser's fees and all other taxable costs, and execution may issue therefor in the manner aforesaid."

"Any dissenting stockholder may at any time prior to the filing of the report of the appraiser withdraw his dissent and give his assent to such sale, lease or exchange."

"The debts and other obligations of the corporation making such sale, lease or exchange shall have priority over the rights of its dissenting stockholders."

Said act of incorporation is a grant of charter for a public service corporation. We think it is clear that Section 5 thereof, as amended, contemplates and authorizes the acquiring by the new company of all of the assets of the old company and authorizes the old company to convey said assets upon such terms as may be agreed upon by the two companies and approved by vote of at least two-thirds of the stockholders of the vendor corporation. Said section as amended contains very significant language as follows: "provided, however, that nothing herein contained shall deprive any stockholder of the Narragansett Electric Lighting Company of any right secured to such stockholder under the third paragraph of section 4 of this act of incorporation or under section 56 of chapter 248 of the general laws in said section 4 referred to." Said section 56 prescribes the procedure for appraising and paying for the minority stock in a corporation when its entire assets are sold, leased or exchanged pursuant to a vote of two-thirds in interest of the stockholders. Said section provides that the appraiser shall make a report to the Superior Court; that exception may be taken to the report; that such a decree as the circumstances may require shall be entered and that an appeal from such decree may be taken to the Supreme Court. Bearing in mind that the language of said section 56 is incorporated by reference into the act of incorporation, there appears to be no reason for including in said section 5, as amended, the proviso

for the protection of the dissenting stockholders of the old company if it was not the intention to authorize a taking of their stock.

Having determined that the legislative intent as expressed in said amended act of incorporation was to permit the old company to take by eminent domain the respondents' stock and their several undivided interests represented thereby in the franchises and other assets of said company, we will now consider whether said act purports to permit a taking in violation of any of the constitutional provisions mentioned in the respondents' motions to dismiss.

Section 10 of Art. I of the Constitution of Rhode Island provides that: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury; . . . nor shall he be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land." It has been uniformly held that this provision of the Constitution was intended solely for the protection of persons accused of crime. *City of Providence* v. *Stephens*, 47 R. I. 387; *O'Neil* v. *Providence Amusement Co.*, 42 R. I. 479; *Joslin Mfg. Co.* v. *Clarke*, 41 R. I. 350; *East Shore Land Co.* v. *Peckham*, 33 R. I. 541; *State* v. *Rosenkrans*, 30 R. I. 374.

Section 5 of Art. 1 of the Constitution of Rhode Island provides that: "Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property or character. He ought to obtain right and justice freely and without purchase, completely and without denial; promptly and without delay; conformably to the laws." This section was taken from the Magna Charta. The chief purpose was to prohibit the king from selling justice by imposing, through his courts, fees on litigants. This section has no application. See *Joslin Mfg. Co.* v. *Clarke, supra*, and cases there cited.

Does said act violate Article 1, Section 16 of the Constitution of Rhode Island? Said section provides that:

298

"Private property shall not be taken for public uses, without just compensation."

Although there is no constitutional provision which in specific terms forbids the taking of private property for a private use, all courts agree that a legislative enactment purporting to authorize such a taking is invalid.

What is a public use? "Anything which will satisfy a reasonable public demand for public facilities for travel, or for transmission of intelligence or commodities, and of which the general public under reasonable regulations will have a definite and fixed use independent of the will of the party in whom the title is vested is a public use." 20 C. J. 556, note (j).

How is the question whether a use is public or private to be determined? We have frequently stated that one who attacks the constitutionality of an act of the Legislature has the burden of satisfying the court beyond a reasonable doubt that the act is invalid. *East Shore Land Co.* v. *Peckham, supra.* The rule as to presumption is stated in 10 R. C. L., p. 29, 30, as follows: "when the public nature of a use for which a taking has been authorized by law is disputed, the question as it presents itself to the courts is not whether the use is public, but whether the legislature might reasonably have considered it public. The presumption is that the use is public if the legislature has declared it to be such, and the decision of the legislature must be treated with the consideration due to a co-ordinate department of the government of the state." If an act is obviously invalid the courts will so declare, and, by necessity, courts must determine whether the legislature could reasonably consider the use to which the property is to be devoted a public use; otherwise a legislative declaration that a use is public when it is obviously private would conclude the question of the constitutionality of the act. In *re R. I. Suburban Railway Co.*, 22 R. I. 455; 10 R. C. L., p. 30.

The respondents argue that their property is being taken for the private benefit of the consenting stockholders, but

no fraud is charged. The Legislature has authorized a taking of the respondents' several undivided interests in the franchises and other assets of the old company in order that all of said franchises and assets may be used by the new company to serve the public. The new company is a public service corporation under the control of the Public Utilities Commission. The Legislature has imposed public duties upon the new company. The new company is bound to serve the public generally at a price which is reasonable for all and equal for those under the same conditions. That the uses to be furthered are public is a question the decision of which by the legislative department, while not absolutely conclusive upon the judicial department in a proceeding like the present, is entitled to a very great weight. *N. Y., N. H. & H. R. R. Co.* v. *Offield,* 77 Conn. 417; 78 Conn. 1; *Offield* v. *N. Y., N. H. & H. R. R. Co.,* 203 U. S. 372; *Opinion of the Justices to the Senate,* 261 Mass. 523; *Spencer* v. *Seaboard Air Line Ry. Co.,* 137 N. C. 107. No one will attempt to argue that such a public service corporation, in generating and distributing electricity, is not performing a public service or not devoting to public uses the franchises and other assets received from the old company to be used for such purpose. See 20 C. J. 584 and authorities cited.

The respondents contend that there was no necessity for taking their stock. The substance of that which was taken was the undivided interest of each of said respondents, as represented by his stock, in the franchises and other assets of the old company. Such franchises were not capable of division. It was reasonable for the Legislature to conclude that a merger of public service corporations using and distributing electricity would avoid a duplication of efforts and work an economy, and that, as the new company can charge only a fair rate, such saving would eventually result in lower rates or better service to the public. However, this is a matter which is no concern of ours. In *Joslin Mfg. Co.* v. *City of Providence,* 262 U. S. 668, the court said: "That the necessity and expediency of taking property for

public use is a legislative and not a judicial question is not open to discussion. . . . The question is purely political, does not require a hearing, and is not the subject of judicial inquiry." To the same effect see *Joslin Mfg. Co.* v. *Clarke, supra;* In *re R. I. Suburban Railway Co., supra; Sears* v. *City of Akron,* 246 U. S. 242; *Alabama Power Co.* v. *Gulf Power Co.,* 283 Fed. 606; *Broderick* v. *Dept. of Mental Diseases,* 160 N. E. 404.

The respondents' next contention under this phase of the case is that the Legislature has failed to make a reasonable, certain and adequate provision for compensation.

"It is well settled in most jurisdictions that, in the absence of a specific requirement in the constitution, compensation need not be paid or even finally determined in advance of the taking, provided, however, that reasonable, certain and adequate provision be made at the time of appropriation to ascertain and secure the compensation to be paid to the owner." 10 R. C. L., p. 125.

What provision has been made for compensation? The act provides that an execution may issue against the old company when the amount due the respondents shall be finally determined. The act further provides that: "The debts and other obligations of the corporation, making such sale, lease or exchange shall have priority over the rights of its dissenting stockholders." The plain inference from this language is that the dissenting stockholders shall be entitled to compensation out of the net assets before any distribution is made to the other stockholders. The entire net assets of the corporation are a fund from which the dissenting stockholders are entitled to be first paid. Before the transfer their stock represented less than one per cent of the assets. Not only the proceeds from the sale of their undivided interests but also the proceeds from the sale of the interests represented by the remaining ninety-nine and a fraction per cent of the stock went into the treasury of the old company to increase the fund from which the respondents are entitled to be paid. As no fraud in the sale is alleged, and

as the whole is greater than any of its parts, there can be no doubt that the proceeds from the sale of the entire assets will, after paying the debts and other obligations of the corporation, be more than sufficient to pay any sum which could be properly awarded as the value of even one-third of the stock.

It is suggested by the respondents that the act contains nothing which specifically forbids a distribution of its assets to other stockholders to such an extent as to leave insufficient assets from which to pay the sum awarded the respondents. It is true that the act contains no such specific inhibition. However, we think it is clear that the legislative intent, as expressed in the act, was that the dissenting stockholders must be paid before distribution is made to the other stockholders. If we find a contrary intent we are bound to assume that the Legislature intended to pass an invalid act. Such a result should be avoided if possible. In re R. I. Suburban Railways Co., 22 R. I. at 456, this court said: "A conflict between the statute and the constitution is not to be implied, and where the meaning of the constitution is clear the court will, if possible, construe a statute in accordance therewith to give the statute effect."

It does appear from the second petition that the directors of the old company have distributed some portion of its assets—how much does not appear— and that "all other property and assets of said The Narragansett Electric Lighting Company have been distributed as dividends in liquidation of said The Narragansett Electric Lighting Company among its stockholders or deposited with Rhode Island Hospital Trust Company, as agent for The Narragansett Electric Company, for distribution among its stockholders when they shall submit their stock certificates for stamping with an appropriate notation of such dividend, and that the Board of Directors of The Narragansett Electric Lighting Company have taken appropriate action to liquidate said corporation and to wind up its affairs." It appears that the new company has assumed the liabilities of every kind of the old company.

In the absence of evidence we can not assume that the directors have so far violated their duties as not to have withheld from distribution assets sufficient to satisfy any award which may be made to the respondents. It further appears that the undistributed assets of the old company have been deposited with the Rhode Island Hospital Trust Company, to hold as the agent of the new company— presumably to be used first in payment of the amount due the respondents. Such assets should be held as a deposit belonging to the old company instead of the new company. The fact that the new company has assumed the obligations of the old company, including that of paying the award to these respondents in payment for their stock, does not justify the old company in so placing their assets beyond their control that they will be unable to satisfy an execution in favor of the respondents. A duty to withhold from distribution and hold subject to its own disposal assets sufficient to satisfy any award in favor of these respondents has been imposed on the old company by the Legislature. The directors of the old company cannot discharge that duty by providing some other security which in their opinion is just as good. As the execution in favor of these respondents will run against the old company, said company must not be dissolved before the claims of these respondents have been satisfied or there has been set aside, by direction of court, a fund which the court, after hearing, shall find is ample to protect the interests of the respondents. Whether the Superior Court has jurisdiction to provide for such change in security we do not decide.

It is suggested by counsel that the fact that it is possible for the directors of the old company, through mistake or otherwise, to illegally distribute assets to such an extent that the remaining assets will be insufficient to satisfy the respondents' claims shows that the act of incorporation and the amendment thereto should be held to be invalid. We have already discussed the matter of legislative intent concerning the fund from which the respondents are entitled

to be paid. We are passing upon the constitutionality of acts as passed by the General Assembly. The question of the constitutionality of said acts does not depend upon events which transpire after the adoption of said acts. The property and assets deposited with the Rhode Island Hospital Trust Company by the old company are subject to the control of the Superior Court for the protection of the respondents. If the assets remaining should happen to be insufficient to satisfy the award in favor of the respondents each stockholder who has received dividends in distribution is liable to the amount so received. Section 38, Chapter 248, G. L. 1923. We think there will be little practical difficulty in satisfying such an award once the amount has been determined.

Said act and amendment do not impair the obligation of contracts. Contract rights are property and as such may be taken under power of eminent domain. In *N. Y., N. H. & H. R. R. Co.* v. *Offield*, 77 Conn. 417, 59 A. 510, the court said: "Any kind of property can be taken for public use on making just compensation. The whole franchise of a corporation may be so taken. . . . Its whole property may be likewise taken. *Bigelow* v. *Union Freight R. Co.*, 137 Mass. 478. Shares of stock represent an undivided interest in such franchises and property, and for the same reason can be taken, if to take them seems to the state necessary in furtherance of public uses. *Black* v. *Delaware & R. C. Co.*, 22 N. J. Eq. 130; id., 24 N. J. Eq. 455, 468, 484."

Said act and amendment do not violate the due process clause or the equal protection clause of the 14th Amendment of the Federal Constitution. All persons in the same category are treated equally. As the court said in *N. Y., N. H. & H. R. R. Co.* v. *Offield*, *supra*. "This proceeding is due process." See also *Miller* v. *State*, 15 Wall, U. S. 478 (1872); *Looker* v. *Maynard*, 179 U. S. 46, (1900); *Offield* v. *N. Y., N. H. & H. R. R. Co.*, 77 Conn. 417; 78 Conn. 1, (1905); 203 U. S. 372. *Colby* v. *Equitable Trust Co.*, 124 App.

304

Div. (N. Y.) 262, (1908); *Germer* v. *Gas & Oil Co.*, 60 W. Va. 143, (1906);*Gregg* v. *Granby Mining & Smelting Co.*, 164 Mo. 616; *Bissell* v. *Heath*, 98 Mich. 472; *People* v. *Calder*, 153 Mich. 724; *Williams* v. *Nall*, 108 Ky. 21; *McGowan* v. *McDonald*, 111 Cal. 57.

Said act and amendment do not purport to delegate legislative and judicial power. The old company was granted power to condemn, provided two-thirds of the stockholders in interest so voted. The Legislature does not require corporations to exercise eminent domain; mere permission is granted. Whether a corporation will avail itself of such permission must be determined by the corporation. The acts before us make ample provisions for a judicial determination of the question of the value of the property taken.

Counsel for respondents argue that the act of incorporation and amendment thereto violate Art: I, Sec. 15 and Art. IX, Sec. 1 of the Amendments of the Constitution of Rhode Island. These questions were not raised upon the record. In *Greenough* v. *Peoples Savings Bank*, 38 R. I. at 115, it was held that this court can not consider constitutional questions which have not been raised upon the record and certified to us as provided by statute.

Our determination is that "Said Act to Incorporate United Electric Power Company" passed at the January Session, A. D. 1926, and the act in amendment thereof, entitled "An Act in Amendment of An Act Entitled 'An Act to Incorporate United Electric Power Company'", approved April 14, 1927, are not in violation of the provisions of Article 1, Section 10 of the Constitution of the United States or of the provisions of the due process clause or the provisions of the equal protection clause of Article XIV, Section 1 of the Amendments of the Constitution of the United States, or of any of the provisions of Article I, Section 5, 10, 12 or 16, or of Article III or Article IV, Section 2, or of Article X, Section 1 of the Constitution of Rhode Island.

The papers in each case with our decision certified thereon are ordered sent back to the Superior Court for further proceedings.

*Claude R. Branch, Edwards & Angell,* for Narragansett Companies.

*Charles A. Coolidge, Jr., Ropes, Gray, Boyden & Perkins,* of Massachusetts bar, for certain bondholders of Narragansett Electric Company.

*John P. Beagan, Joseph E. Beagan, Robert P. Beagan,* for respondents Beagan and Gray.

*Charles R. Easton,* for respondent Sabre.