THE NARRAGANSETT ELECTRIC LIGHTING COMPANY *vs.* GEORGE W. SABRE *et al.*

THE NARRAGANSETT COMPANY *vs.* THE NARRAGANSETT ELECTRIC LIGHTING COMPANY.

JUNE 11, 1930.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Barrows, and Murdock, JJ.

38

RATHBUN, J. These two causes are petitions in equity. In the Superior Court separate motions were made to dismiss each petition. Each motion raised upon the record constitutional questions which were certified to this court for determination. See General Laws, 1923, Chapter 348, Section 1.

The Narragansett Electric Lighting Company, a public service corporation, acting upon purported legislative authority, transferred all of its franchises and other assets to the United Electric Power Company, a public service corporation, the name of which has since been changed to The Narragansett Electric Company. We will hereafter refer to the first mentioned corporation as the old company and to the last mentioned corporation as the new company. The old company filed the first petition which prays (1) that an appraiser be appointed to appraise the value of the stock owned in said company by stockholders who objected to said transfer; (2) that a decree be entered ordering the petitioner, the old company, to pay such dissenting stock-

holders the appraised value of their shares. The second petition which was filed by the Narragansett Company, a stockholder in the old company, prays for a dissolution of the old company.

Said motions to dismiss were filed by dissenting stockholders who contend that the acts purporting to sell and transfer the assets of the old company to the new company violated rights guaranteed to said stockholders by the Constitution of this State; said dissenting stockholders, by their said motions, oppose the petition seeking an appraisal of the value of their stock and also oppose the petition to dissolve the old company.

The charter of the new company, granted by the General Assembly, purports to authorize said company to purchase all of the assets, property, rights, privileges and franchises of any corporation organized to carry on a similar business in this State and also purports to authorize any company so organized to sell all of its assets, property, rights, privileges and franchises to the new company. Said charter further provides that: "Any such sale shall be approved by vote of at least two-thirds in interest of the stockholders of the vendor corporation entitled to vote, at a meeting of the stockholders of such corporation duly called."

"Upon consummation of any such sale the purchasing corporation shall become vested with all the rights, privileges powers and franchises held or enjoyed by the vendor corporation."

"If a sale be effected in accordance with the foregoing provisions hereof, any stockholder of the vendor corporation, who shall not have voted in favor of said sale either in person or by proxy, shall be entitled to the rights, and such vendor corporation shall be subject to the duties, obligations and liabilities set forth in section 56 of chapter 248 of the general laws with respect to dissenting stockholders and to corporations which sell, lease and exchange their entire assets, respectively." Said section 56 provides the procedure for a judicial determination of the value of the stock of the

minority non-consenting stockholders and provides that when the decree fixing such value has become final an execution shall be issued thereon. The act incorporating the new company—under its original name—was amended by an act which provided that when said company has received from the old company a "conveyance of all or substantially all of its assets, property, rights, privileges and franchises, which conveyance has been approved by vote of the holders of not less than two-thirds of its outstanding stock", at a meeting duly called to consider such propositions, the new company may change its name to "The Narragansett Electric Company."

These petitions have been here once before on constitutional questions raised by said dissenting stockholders, whom we will hereafter refer to as "the respondents", see *The Narragansett Electric Lighting Co.* v. *Sabre et al.*, 50 R. I. 288, 146 A. 777, and we held that "the legislative intent as expressed in said amended act of incorporation was to permit the old company to take by eminent domain the respondent's stock and their several undivided interests represented thereby in the franchises and other assets of said company". We held also that the provisions of said act did not violate any one of the numerous constitutional provisions brought in question at that time. The papers in each cause were sent back to the Superior Court for further proceedings.

The next proceeding of importance was the filing by said respondents of another motion in each cause to dismiss, based on allegations that the procedure in adopting said act of incorporation and the amendment thereto was in violation of Art. IX, Sec. 1 of the Amendments of the Constitution of Rhode Island. Thereupon the petitioners filed in the Superior Court, and again in this court, motions to dismiss said respondents' motions to dismiss these petitions and alleged as grounds therefor that: "Said respondents are not entitled to have the questions raised by their motions heard on the merits . . . because they have been guilty of such laches as bar them effectively from the relief which they

seek by said motion",—the facts on which the allegation of laches was based were set forth in detail—and that said respondents are barred from raising further constitutional questions because they have heretofore raised such constitutional questions,—"approximately twenty-nine" in number—as they apparently desired to raise and could, before the petitions were certified here the first time, have raised the constitutional questions which they now seek to raise.

When these petitions were certified to us the first time for hearing on constitutional questions, based upon respondents' motions to dismiss, the petitioners filed in this court motions, based on allegations of facts constituting laches, to dismiss said motions to dismiss said petitions. At that time the truth of the facts alleged and relied upon to constitute laches had not been established; we therefore refused to pass upon the question of laches and considered the constitutional questions upon the merits. The truth of the facts now relied upon to constitute laches is established by a stipulation filed by the parties in this court.

The respondents urge that these petitioners should not be permitted to set up laches against the respondents, because, as they contend, they are not seeking affirmative relief. The old company is not seeking affirmative relief other than performing the duty, set forth in said act, to seek to obtain a judicial determination as to the amount which said company should pay to the respondents as the value of their stock. The respondents' opposition is merely preliminary to asking for affirmative relief. The respondents by their motions to dismiss are asking this court to declare that the legislative act, pursuant to which the assets of the old company were transferred to the new company, was illegal and that the transfer was void.

Assuming that the legislative procedure in adopting said act of incorporation was insufficient to authorize a valid transfer by the old company of all of its assets to the new company,—but upon this question we express no opinion —said respondents must meet the question of their own

laches before they can obtain an order for a re-transfer of assets to the old company and for the re-establishment of said company. The question of laches is so vital that it should be settled at the first opportunity. Furthermore, courts do not pass upon constitutional questions when it is unnecessary for the determination of the case. See *Blais* v. *Franklin*, 30 R. I. at 421, where Sweetland, J. said: "We do not consider it to be the intent of the legislature that this court shall pass upon the question of the constitutionality of an act of the General Assembly that is not germane to the case in which it is raised, or in a case which is clearly without standing in court, or when the determination of the question is entirely unnecessary." Said justice quoted from the opinion of Chief Justice Marshall in *Ex parte Randolph*, 2 Brock. 447, as follows: "No question can be brought before a judicial tribunal of greater delicacy than those which involve the constitutionality of a legislative act. If they become indispensably necessary to the case, the court must meet and decide them; but if the case may be determined on other points, a just respect for the legislature requires that the objection to its laws shall not be unnecessarily and wantonly assailed."

For many months before the sale was effected all of the respondents had knowledge of the fact that a sale was contemplated. The sale was consummated in December, 1927. The first public announcement of the plan was made during the summer of 1926, and notices concerning the plan were at that time sent to the stockholders of the old company. By February 1, 1927, the holders of record of more than 96 per cent of the outstanding stock of the old company had consented to the plan and agreement, and it was then put into effect by the transfer of all of the consenting shares to a holding company. The holding company then issued and sold to the public its collateral trust bonds of a principal amount of $27,500,000 and these bonds were secured by a pledge of the shares of stock of the old company. These bonds provided that, upon the transfer of the property of

the old company to the new company, as contemplated in the plan, first mortgage bonds of the new company, secured by a mortgage of its property, might be substituted therefor. On October 29, 1927, the old company mailed to each of its stockholders a notice of the offer of the new company to purchase its property, together with a call of a special meeting of its stockholders to be held on November 29, 1927 to consider the question of accepting the offer. The notice was explicit, and upon its receipt no one of the respondents could have had any reasonable doubt that the sale would be made unless enjoined. In the meantime the Public Utilities Commission after holding protracted public hearings, had entered its order authorizing the new company to issue its first mortgage bonds of a principal amount of $27,500,000 and 326,000 shares of its capital stock, of the par value of $50, at cash for the purpose of acquiring the property in question. The present respondents did not appear in these proceedings, and took no action questioning the validity of the proposed transfer. All of the respondents were represented at the stockholders' meeting, held to consider the proposition on November 29, 1927, and some of them filed a "protest against the taking of any action by the stockholders of said company authorizing or approving the sale." This protest did not in any way suggest objection on the ground of unconstitutionality of such action, nor did it contain any statement that the stockholders signing it contemplated taking any further action. Immediately after the meeting of November 29, 1927, when the sale was authorized and it was voted to distribute the proceeds of the sale, a notice was sent to each stockholder, informing him of the action taken at said meeting, in the same envelope with a check for a dividend declared at that meeting. Each of the respondents cashed one of the dividend checks made out to his order. No objection being made, the old company transferred and conveyed its property to the new company and received the consideration. On January 1, 1928, the holding company

had caused its collateral trust bonds to be called for exchange for mortgage bonds, and the mortgage bonds of the new company to the amount of over $27,000,000 were issued and distributed to the public. The new company entered into possession of the property and franchises of the old company, and had been operating them for a period of several months before the first motions of the respondents were filed in these cases, and has since been operating them. Both before and after the filing of the first motions, said company made large payments, entered into substantial contracts, constructed additions to the property, incurred liabilities, filed rate schedules with the Public Utilities Commission, which have been put in effect, and acquired additional properties useful in the conduct of its business.

In addition to the above facts, it was further stipulated as follows: "Each of said respondents knew long before said stockholders' meeting of November 29, 1927, the following facts: "(1) That said plan and agreement (both in its original form and as modified) contemplated said sale. (2) That over 94% of the stock of said petitioner had on December 6, 1926, been acquired and was held for the purpose of consummating said plan and agreement, (3) That said sale was to be approved at said stockholders' meeting, (4) That it was intended that said First Mortgage Bonds should be distributed to the holders of the Collateral Trust Bonds of said holding company in substitution therefor. Nevertheless, said respondents took no steps to enjoin, delay or prevent said sale and distribution and raised no objection thereto on constitutional grounds, until after all of the property, assets, and franchises of said petitioner were transferred to The Narragansett Electric Company and said The Narragansett Electric Company had operated said property for over two months and until after its said First Mortgage Bonds were distributed among the public generally".

Our determination is that the respondents by reason of their own laches, are not entitled to question the validity of the sale and transfer of assets. With full knowledge of

the facts and ample time within which to act they choose to stand by and permit the transfer of assets, the acquisition of other property to be used in connection therewith the assumption of contract obligations, the sale of a large amount of securities to investors purchasing in good faith, and permit the old company to distribute as dividends in liquidation a very large percentage of the purchase price which was the sole assets of said company after the transfer. Equity and good conscience do not permit one to avoid a sale and thereby cause great and irreparable injury to others, some, at least, of whom are innocent of wrong, after negligently waiting until the harm is done, instead of timely raising the question of the validity of such proposed sale by application to some proper tribunal.

In *Penn. Mut. Life Ins. Co.* v. *Austin,* 168 U. S. at 698, the court said; "where a court of equity finds that the position of the parties has so changed that equitable relief cannot be afforded without doing injustice, or that the intervening rights of third persons may be destroyed or seriously impaired, it will not exert its equitable powers in order to save one from the consequences of his own neglect."

In *Emerson* v. *N. Y. & N. E. Railroad Co.*, 14 R. I. 555 at 559, this court held that a stockholder was barred by laches because he "could have objected to and settled the validity of the sale which disposed of all the corporate property and business, and thereby have determined the real question in this case before the rights of other parties had intervened." See also *Boston & Providence R. Corp.* v. *N. Y. & N. E. R. Co.*, 13 R. I. 260; *Hays* v. *Port of Seattle*, 251 U. S. 233; *Bartlett Trust Co.* v. *Elliott*, 30 F. (2nd) 700; *Dunn* v. *Fort Bend County*, 17 F. (2d) 329; *Meyer* v. *City of Alma.* 221 N. W. 438; *Venner* v. *Chicago City Ry. Co.*, 236 Ill. 349; *Tanner* v. *Lindell Ry. Co.*, 180 Mo. 1; *Spencer* v. *R. R.*, 137 N. C., 107; *Ross* v. *City of Portland*, 105 Fed.682; *Chapman & Harkness* v. *M. R. &c. R. R. Company*, 6 Ohio St. 119; *Windhurst* v. *Central Leather Co.*, 101 N. J. Eq. 543; *Finch* v. *Warrior Cement Corp.*, 141 A. 54; *Ecker* v. *Ken-*

*tucky Refining Co.*, 144 Ky. 264; *Tash* v. *Adams*, 10 Cush. 252; *Chase* v. *Chase*, 20 R. I. 202.

The respondents not only knew that a transfer would be made but were advised by able counsel and knew that if they wished to avoid the sale it was their duty to ask for affirmative relief and thereby obtain an adjudication of the legal questions, which they desired to raise against the validity of such transfer, before irreparable injury would be done to the old company, the new company and the investors who thereafter purchased the securities issued against the transferred assets as property of the new company. The respondents do not attempt to excuse their delay other than by stating that they relied upon the protest, but they were not justified in assuming that their protest at the stockholder's meeting would avail to prevent the transfer of assets.

In *Penn. Mut. Life Ins. Co.* v. *Austin, supra*, at 697, the court said: "In *Lane & Bodley Co.* v. *Locke*, 150 U. S. 193 and *Mackall* v. *Cassilear*, 137 U. S. 556, it was held that the mere assertion of a claim, unaccompanied with any act to give effect to the asserted right, could not avail to keep alive a right which would otherwise be precluded because of laches." See also *Venner* v. *Chicago City Ry. Co., supra; Windhurst* v. *Central Leather Co., supra; Spencer* v. *R. R. supra; Smith* v. *Stone*, 21 Wyo. 62.

The fact that the new company is a public service corporation, actually serving the public is a reason why a court of equity will more readily consider laches. *Penn. Mut. Life Ins. Co.* v. *Austin, supra.*

The motions of the Narragansett Electric Lighting Company, filed in the clerk's office of this court on the 31st day of December, A. D. 1929, to dismiss the motions to dismiss of the respondents George W. Sabre, and Luvia C. Sabre, filed in the clerk's office of the Superior Court on the 13th day of November A. D. 1929, and to dismiss the motions to dismiss filed in the clerk's office of the Superior Court by the respondents John P. Beagan, Margaret E. Beagan and E.

Alice Gray, on the 24th day of December A. D. 1929, are granted and said motions of said respondents to dismiss are dismissed.

The papers in each cause with our decision certified thereon are ordered sent back to the Superior Court for further proceedings.

*Edwards & Angell* for Narragansett Companies.

*John P. Beagan, Joseph E. Beagan, Robert P. Beagan,* for respondents, Beagan & Gray.

*Charles R. Easton,* for respondents Sabre.

*Ropes, Gray, Boyden & Perkins,* for certain bondholders.