827 So.2d 6 (2002)
HARRIS PROPANE, INC., William T. Harris and Joseph P. Harris, Appellants,
v.
MISSISSIPPI TRANSPORTATION COMMISSION, Appellee.
No. 2000-CA-01353-COA.
Court of Appeals of Mississippi.
May 7, 2002.
Certiorari Denied September 26, 2002.
*7 Kenneth B. Rector, Vicksburg, attorney for Appellants.
Jack Homer Pittman, Hattiesburg, Jerry Campbell, Vicksburg, attorneys for Appellee.
EN BANC.

ON MOTION FOR REHEARING
KING, P.J., for the court.
¶ 1. The motion for rehearing is denied. The original opinion is withdrawn, and this opinion with specially concurring opinion is substituted.
¶ 2. This is the second appeal of this eminent domain case by Harris Propane, William Harris and Joseph Harris (the Harrises). In the first appeal, this Court found error in the failure to consider what, if any, impact, the "Development Agreement" should have upon the value of the property subjected to condemnation. Accordingly, this case was "remanded for a new trial on all issues."
¶ 3. Upon remand and a new trial, in the Warren County Special Court of Eminent Domain, the jury having heard the evidence, and being instructed to decide what, if any, impact the development agreement had upon the property subjected to condemnation, found that the Harrises had suffered no monetary impact.
¶ 4. Aggrieved by this decision, the Harrises have appealed and alleged five assignments of error. However, these issues are inextricably interwoven, and in reality boil down to one issue. That one issue is whether the prior opinion of this Court mandates that the Harrises be awarded damages for the "Development Agreement."
¶ 5. Finding that it did not, the decision of the trial court is affirmed.

STATEMENT OF THE CASE
¶ 6. The facts of this case are not in dispute. The Harrises owned a tract of land of 3.6 acres. Johnny Jabour owned a smaller tract of 0.149 acres. Together, Jabour and the Harrises subsequently purchased a third tract, comprised of 6.56 acres. Only Jabour's individually owned tract had access to Mississippi State Highway 27. The Harrises' property's only access to Highway 27 was a narrow easement across Jabour's tract, which was too small to permit commercial development. The Harrises and Jabour entered into a "Development Agreement," in which they stated their "intent" to pool the properties into one larger piece in order to make commercial development of the property more feasible. While the agreement did not in itself actually convey any property from one party to another, it did give each party the option to match the purchase price and buy any of the pooled property that one of the parties might seek to sell to any third party.
¶ 7. The Mississippi Transportation Commission (MTC) took the majority of the parcel owned by Jabour individually, *8 and smaller portions of the two other parcels. MTC valued the land by Jabour individually at a much higher price per square foot than the two other parcels of land. The Harrises contend that, because of the development agreement in which the parties agreed to develop all the land together, their land should have been valued higher than MTC's determination.
¶ 8. In the first trial, the jury never considered the effect of the development agreement on the value of two tracts in which the Harrises had an ownership interest. The circuit court held that the development agreement was not admissible because an executory contract was not subject to taking, and valuation, pursuant to eminent domain. This Court disagreed, holding that an executory contract was compensable. Thus, the case was remanded for a new trial on all issues, including a jury determination of what, if any, was the value of the development agreement.
¶ 9. A second trial was held, in which the development agreement was introduced into evidence. The Harrises and MTC each introduced expert witnesses who testified regarding the Harrises' property and any affect or value it might be afforded because of the development agreement. Following the presentation of this evidence, the jury was instructed to construe the development agreement to determine whether its effect was to provide some value to the Harrises' property, and if so determine the amount. The jury's verdict was that the development agreement gave no value to the Harrises' property. The issues presented in this appeal pertain to the construction given to the development agreement and whether the expert testimony was properly admissible.

ANALYSIS

I
¶ 10. The Harrises contend that upon remand from this Court's prior holding, and the resulting law of the case, the trial court erred in allowing MTC to argue that the development agreement did not make the parcels of property they held in their own names and jointly with Jabour more valuable. The Harrises contend that this Court's prior opinion found as a matter of law that the development agreement created an ascertainable property right. This assertion misreads the prior opinion, in which this Court held "[w]e rule that whether the contract rights of the Harris brothers in this case are subject to present evaluation is a question of fact to be determined after testimony is presented on this issue." In that opinion, this Court relied upon Hemphill v. Mississippi State Highway Comm'n, 245 Miss. 33, 50, 145 So.2d 455, 463 (1962), in which our supreme court held that a future interest in property was subject to recompense in an eminent domain taking, if the future interest is not "speculative" and was so certain to result in value to an individual that its value was "capable of present evaluation." Hemphill also explicitly found that the determination of whether a future interest was, or was not, so speculative to be "capable of present evaluation" was a jury question. Id. at 52, 145 So.2d 455. Contrary to the Harrises' contention, the intent and effect of this Court's prior opinion was to directly place the question of what, if any, value the contract conveyed before a jury. This Court finds the Harrises' suggestion that this Court's prior opinion limited the Special Court of Eminent Domain to a calculation of the damages due to be erroneous.

II
¶ 11. Having determined that the matter was an issue to be resolved by the jury, it naturally follows that each side was entitled to present competent testimony *9 as to its view of the issue. That holding is in accord with general determinations of questions of law and of fact in cases involving contracts. If the terms of a contract are subject to more than one reasonable interpretation, it is a question properly submitted to the jury. Mississippi Transp. Comm'n v. Ronald Adams Contractor, Inc., 753 So.2d 1077, 1087(¶ 32) (Miss.2000); Garner v. Hickman, 733 So.2d 191, 195(¶ 15) (Miss.1999). In this case, MTC asserted that under the terms of the development agreement, it was not certain that the tracts would be developed in common. The development agreement stated that if Jabour sought to sell his tract to a third party, the Harrises had a right to meet the price and purchase it for themselves. However, MTC argued, if one assumed that the Harrises desired to sell all three properties to a third party for a specific price, they would have no legal right to compel Jabour to sell his property if he simply disagreed with the hypothetical proposed offer, and desired to hold onto his property. This is a rational reading of the development agreement. MTC argued to the jury, through Boackle's testimony, that the development agreement did not create a certainty that the three tracts would be developed as one, and given this ambiguity the development agreement did not operate as to make the two tracts without access to Highway 27 more valuable than that appraised by MTC. The factual issues of a contract susceptible to more than one interpretation are not properly put before an appellate court, but are questions for a jury to resolve. See Smith v. Noble Drilling, 784 So.2d 1003, 1004(¶ 6) (Miss.Ct.App.2001).
¶ 12. The Harrises assert that M.R.E. 702 should have required the trial court to find that Boackle's testimony as to the legal conclusion of whether the development agreement conveyed enforceable legal rights was inadmissible. This state's case law is replete with cases in which expert witnesses testify to the legal conclusion of the value of a specific tract of land and the various uses for which it can best be applied. See, e.g., Oughton v. Gaddis, 683 So.2d 390, 394 (Miss.1996); Mississippi State Highway Comm'n v. Hancock, 309 So.2d 867, 869 (Miss.1975); Mississippi State Highway Comm'n v. Brooks, 239 Miss. 308, 317, 123 So.2d 423, 427 (1960). As such, the trial court did not err allowing expert testimony as to what effect the development agreement had on the properties' values.
¶ 13. Accordingly, this matter is affirmed.
¶ 14. THE JUDGMENT OF THE WARREN COUNTY SPECIAL COURT OF EMINENT DOMAIN IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
BRIDGES, THOMAS, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR. LEE, J., CONCURS IN RESULTS ONLY. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., BRIDGES AND LEE, JJ.
SOUTHWICK, P.J., concurring:
¶ 15. As the majority explains, this is the second appearance of this case before the Court. In 1998, we reversed the refusal of the special court of eminent domain to permit consideration of the contract as a compensable interest in property. Harris Propane Inc. v. Mississippi Transportation Comm'n, 708 So.2d 103 (Miss.Ct.App. 1998) (mem.). I dissented to that conclusion and continue to believe that it was a misreading of the relevant precedents. Nonetheless, I also find that on this second *10 appeal, the law of the case doctrine applies.
¶ 16. The law of the case principle was discussed by the Supreme Court in a decision that, as here, resolved issues raised in the second appeal of a suit. The Court rejected the appellant's demand that the analysis in the first appeal be overturned:
The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously been decided. It is founded on public policy and the interests of orderly and consistent judicial procedure.
Florida Gas Exploration Co. v. Searcy, 385 So.2d 1293, 1295 (Miss.1980), quoting Mississippi College v. May, 241 Miss. 359, 366, 128 So.2d 557 (1961). When a case returns to the appellate court that earlier ordered the proceedings that are under review, the importance of reconsidering the former statement of legal principles is subordinate to the benefits of consistency and finality.
¶ 17. Therefore, I concur in the result reached by the majority based on the trial judge's proper application of our instructions for the remand. Still, I find that the precedent that this case creates to be troubling. For that reason, I restate the issues set out in the 1998 dissent in order to explain why this result appears inconsistent with Mississippi Supreme Court precedent. For the future, whether nebulous interests such as were involved here must be valued during condemnation will not be controlled by the law of one case but by stare decisis. What is settled decisional law to apply will then need to be considered.
¶ 18. The first appeal was one of those occasional suits that put into focus the fundamentals of an area of the law. We needed to return to rules regarding what interests affecting property are compensable in a condemnation and which are not interests in property at all. The majority concluded that among the compensable interests are those arising under this contract by land owners to engage in their best efforts to market their properties together. Such an interest has never been recognized as compensable. To make it so opens the previously closed door to an enormous number of claims of lost expectations when condemnation has occurred.
¶ 19. The majority started by asserting that a contract can be a compensable interest, citing 29A C.J.S. Eminent Domain § 56 (1992) at 176. That is certainly true, but it is error to conclude that because an interest is founded on contract that it is by definition adequate for compensation. The majority's quote from Corpus Juris Secundum came from the general section discussing the kind of property that can be condemned. Three cases are cited by the encyclopedia to support the proposition that the majority quoted. One is a wartime requisitioning of a contract for the building of a ship, so that the Navy can have the use of the ship instead. Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 115, 44 S.Ct. 471, 68 L.Ed. 934 (1924), cited at 29A C.J.S. Eminent Domain § 56 (1992) at 176 n. 85. A second case was a statutory altering of the rights of holders of bonds issued by the New York Port Authority. United States Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 3, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), cited at 29A C.J.S., Eminent Domain § 56 (1992) at 176 n. 84. The issue was whether this was *11 an impermissible impairment of contract. United States Trust, 431 U.S. at 3, 97 S.Ct. 1505. The final case cited involved a statute that permitted a public service corporation to transfer its assets to a new corporation by a majority vote of the stockholders; this change to the original charter was alleged by minority stockholders to be an impairment of their contract rights. Narragansett Electric Lighting Co. v. Sabre, 50 R.I. 288, 146 A. 777, 779-780 (1929), cited at 29A C.J.S. Eminent Domain § 56 (1992) at 176 n. 84. Thus contract rights can be taken for public useto make public service corporations more efficient, to require a ship to be built for the public and not for a private company, or to change the terms of bonds. In none of these cases was the issue the one that we face: the taking of real property that results in reducing the anticipated benefits under a contract affecting that land.
¶ 20. Our factual situation is discussed by the same collator of cases that had been relied upon by the majority, but in a different section:
The constitutional guaranty of just compensation applies only to the taking or injury of property or property rights, and only those interests which give the holder some legally enforceable and recognizable interest in distinct property will be considered property....
29A C.J.S. Eminent Domain § 74 (1992) at 215 (footnotes omitted, emphasis added).
¶ 21. Even more on point, the other principal legal encyclopedia concludes that "a person other than the owner in fee is not entitled to compensation ... unless he has some `estate' or `interest' in the property, a mere contractual right without such `estate' or `interest' is not sufficient." 26 Am.Jur.2d Eminent Domain § 177 at 854-855 (footnotes omitted).
¶ 22. A condemnation takes property. A contract was the property taken for public use in the cases that support the majority's viewpoint. The property taken here was real property owned by Jabour. The issue for us was whether Harris had any property interest affectednot just whether he was affected. In other words, when Jabour's property was seized by the Commission, was something of Harris's in the estate, the "bundle of sticks," that was taken? If so, Harris was entitled to attempt to prove its value. If on the other hand there was no estate but only a plan that was disappointed, no compensation was due.
¶ 23. Thus it is evident that having a "contract" does not answer the question of whether someone has a compensable interest. The person may or may not. An interest such as the one in issue here has not been the subject of an appeal to the Mississippi Supreme Court. Some precedents that I discuss next address ownership of an interest in land, e.g., leaseholds, reversionary interests created by deed, a covenant that runs with the land. Each of these interests is among the "bundle of sticks" that form the total property in question. Whether the interest in land is executory, a future interest, or some other permutation does not keep it from being given a value in a condemnation. But that does not answer our question here.
¶ 24. The principal case relied upon by the majority in the initial appeal focused at considerable length on whether the type of interest there that was cancelled by condemnation involved "a compensable interest in property." Morley v. Jackson Redevelopment Authority, 632 So.2d 1284, 1295 (Miss.1994). The court surveyed law from other states and concluded that a majority of states found that a restrictive covenant burdening land to be "property for the purposes of the Fifth Amendment...." Id. *12 at 1296. Considerable attention is paid to this question. Id. at 1295-97. No party argued that the claim in Morley did not arise from a binding agreement. The interest was at least a contract right but that was not enough.
¶ 25. The majority in our case stopped just where the court in Morley began. The question is not whether there is a right created by an agreement between two parties, and the right concerns land. The issue is whether that right is "`property' for purposes of the takings clause...." Id. If I could have found that the contract here created that specie of interest, I would have joined the majority. However, this is a different kind of interest altogether. It is necessary to turn to the precise contract language to discern that point.
¶ 26. The following categorizes the obligations of the contract:
1) Agree that they will attempt ("undertake") to develop the three parcels together;
2) Agree that neither will sell without first offering the other the property on the same terms (a right of first refusal);
3) Agree that if the parties themselves decide to develop the property at some future date, the parcels will be conveyed to a single entity and individual mortgages satisfied.
¶ 27. During a pre-trial hearing, both parties engaged in an intense discussion on the admissibility of the future development agreement. The judge concluded, and I found him to be eminently correct, that the wording of the agreement expressed an "intention" which was not very well defined.
¶ 28. By this agreement, did Harris receive an "estate" in Jabour's land? That is the fulcrum upon which the case turns. The Restatements have frequently been turned to as an expert interpreter of basic principles of the law. I do so here. A contract creates a compensable interest for eminent domain purposes "in so far as the promise creates an obligation binding upon the successors of the promisor." RESTATEMENT (FIRST) OF PROPERTY § 565 (1944). A property interest is created by a contract, as opposed to just a personal right, only to the extent that "the use of the land of the promisor may be enforced by injunction." Id. at § 566, cmt b. That makes perfect sense. The interest is in land (similar to a restrictive covenant, an easement, or a leasehold) only to the extent the beneficiary of the promise may go into court and have that promise enforced against someone who purchases the land and ignores the asserted right.
¶ 29. Is there anything in this contract which gives Harris the right to force a purchaser from Jabour to continue the "undertaking" that is its subject? Would a sale by Jabour take with it a right that Harris has in the property sold as opposed just to a personal right?
¶ 30. The only concrete obligationeverything else is open-ended and unenforceable is that each has the right of first refusal of an offer made to the other. If either party does not match the offer, the agreement is dead and a purchaser is not obligated to continue the development agreement. The non-selling party certainly can try to enter an agreement with a new owner, but that is a new, arms-length negotiation of no relevance to the decision here. A first-refusal right has no realistic application when the "offer" is from a forced sale by condemnation, but it still may have a recognizable fair market value as of the date of the condemnation.
¶ 31. A right of first refusal itself can be an interest in real property enforceable by injunction. 5A POWELL ON REAL PROPERTY, *13 ¶ 771[2] (1987). One court after reviewing precedents from other states found that most hold that a right of first refusal is a real property right. Manufactured Housing Communities of Washington v. State, 142 Wash.2d 347, 366, 13 P.3d 183, 192 (2000). The Rule against Perpetuities only applies to estates in land, and the Supreme Court has found that a right of first refusal is subject to the Rule. C & D Inv. Co. v. Gulf Transport Co., 526 So.2d 526, 528 (Miss.1988). Here the preemptive right would not have violated the Rule against Perpetuities since under the "wait and see" doctrine, no violation of the rule had yet occurred at the time of condemnation. Murphy Exploration & Production Co. v. Sun Operating Ltd. Partnership, 747 So.2d 260, 265 (Miss.1999). Further, there is no language that the right can be assigned or inherited. Thus it may only be a personal right and could not violate the perpetuities doctrine.
¶ 32. If this right of first refusal was an interest in land, then its holder would be entitled to the market value of the right on the date of condemnation, a value that is unaffected by the rest of the agreement since the agreement itself disappears if the right is exercised. On remand the jury was asked to consider whether any part of these contract terms had valueall of which were said to be property rights and the jury stated that none did. Though I disagree as to the remainder of the rights created by this contract, I find that it was proper to consider the right of first refusal as a property right. The jury's finding means that the right to buy this particular parcel "on the same terms and conditions as may be offered by a potential third party purchaser" had no value. Based on the evidence presented, I find no error in that.
¶ 33. The remainder of this agreement quite simply fails to be an enforceable interest or estate in land. There has been a frustration of purpose. It was not so strong a purpose that the parties were willing to go beyond an agreement to permit matching some third party's offer to purchase. This is a significantly smaller, and more speculative, frustration of purpose than that lost by a business owner who can no longer operate his business. Yet such an owner is not entitled to damages based on the calculation of lost income potential, but only on the before and after value of the property. Potters II v. Mississippi State Highway Comm'n, 608 So.2d 1227, 1232 (Miss.1992).
¶ 34. My 1998 dissent was not founded on a conclusion that there was anything fraudulent or in any other respect unworthy about the development plan. It was a reasonable effort for neighbor owners to fish for development possibilities. Before the first nibble, eminent domain removed some of the potential. There may never have been development or such development may have been far in the future and significantly different than present speculations. Regardless, issues of valuation are never reached unless Harris had an estate or interest in the land condemned, an interest identifiable by whether it could be enforced by injunction or other means. This joint development contract, with the exception of the right of first refusal, created no property interests.
¶ 35. The absence of Mississippi case law on similar contracts may in part be explained by the novelty of the argument. This interest that is not in property itself simply has never been recognized as something for which compensation has been paid. The trial judge realized that at the first trial and had excluded Harris's evidence on the value; we reversed in 1998. Engaging in a scavenger hunt through the case law of other states is not an altogether useful exercise, but the scarcity of Mississippi law on efforts to gain compensation *14 for similar contracts has caused the search to be made. One of few cases in which this argument was made concerned a development contract on adjacent parcels. State v. Tedesco, 4 Utah 2d 31, 286 P.2d 785 (1955). There a contract had actually led to platting the common property, but the plat had not been presented or approved by the appropriate authority. The court stated "that at best the defendant may have had a contract right in the development of prospective residential land, which, if carried out, would have enhanced the value of its land[;] such a claim cannot be made the basis for intervention in a condemnation suit brought by the state against property in which defendant has no vested interest." Id. at 789. The court held:
[t]he land itself is compensable, as are vested interests such as leaseholds having a fair rental value, life estates and the like, and we choose to adhere to the sensible doctrine, best expressed in 2 NICHOLS, EMINENT DOMAIN, 3rd Ed., Sec. 5.76(2), p. 115, where it is said:
"... The taking of the land terminates all contracts in respect to its use and the owner is under no liability for his failure to carry out such agreements, but it is well settled that he is not entitled to compensation for the loss of his contracts. No distinction has been drawn between a damage to business caused by making impossible the performance of existing contracts and a damage consisting of the loss of expected contracts. If an owner of land taken by eminent domain is not entitled to compensation for the loss of profits on his contracts, existing and expected, taken as a whole that is, injury to his businessa fortiori he is not entitled to compensation for the loss of expected profits on a single contract."
Tedesco, 286 P.2d at 789. As already discussed, our supreme court has agreed that lost business is not a compensable interest. Potters, 608 So.2d at 1232. The Utah court quoted another part of the Nichols treatise that "all contracts for the use of land are entered into in view of the possible taking of the land for public use, and the sovereign power of eminent domain cannot be impaired by contracts of private parties. It is only when `property' is created by contract, as in the case of a franchise or a lease, that the protection of the constitution can be invoked." Tedesco, 286 P.2d at 789; see also Cravero v. Florida State Turnpike Auth., 91 So.2d 312 (Fla. 1956).
¶ 36. Based on the law of the case doctrine, I concur in affirming the new judgment entered after our remand.
McMILLIN, C.J., BRIDGES AND LEE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.