73 N.J. Super. 332 (1962)
179 A.2d 778
THE PORT OF NEW YORK AUTHORITY, PLAINTIFF,
v.
HACKENSACK WATER COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 23, 1962.
*334 Mr. Francis A. Mulkern for plaintiff (Mr. Sidney Goldstein, of counsel).
Mr. Joseph Keane for defendant (Mr. Samuel W. Zerman, attorney)
McGEEHAN, J.S.C.
The Port of New York Authority (Authority) is a body created by compact between the States of New Jersey and New York, with the approval of the Congress. The Hackensack Water Company (Hackensack) is a privately owned public utility corporation of the State of New Jersey. On June 4, 1959 the Authority instituted suit against Hackensack seeking to recover from defendant the sum of $23,049.04 paid by plaintiff to defendant for relocating certain water mains, valves, hydrants, etc., owned by defendant, which were, prior to the relocation, located in public streets and highways in New Jersey at or adjacent to plaintiff's George Washington Bridge (Bridge) and Lincoln Tunnel (Tunnel). The Bridge and *335 Tunnel are trans-Hudson vehicular facilities connecting the States of New Jersey and New York.
Plaintiff wrote a letter, dated May 29, 1953, to defendant, setting forth:
"As you are aware, the Port of New York Authority is engaged in the construction of connecting ramps between the George Washington Bridge and the Palisades Interstate Parkway. In order to construct these ramps, it will be necessary to relocate your * * *"
followed by a description of the facilities, then
"In order to make way for these ramps and to provide for the widened toll booth plaza and main approach of the George Washington Bridge, the Port Authority desires and hereby directs you to relocate your facilities as shown on the aforementioned drawings.
The Port Authority will reimburse your company for the cost of these relocations calculated on a time and material basis with application of standard percentages for overhead costs.
This reimbursement of your company by the Port Authority will be made, however, upon the distinct understanding:
1. That if the Port Authority shall, within the time prescribed by law, decide that it was under no legal obligation to do so, it may institute such litigation as it may consider or may be advised is necessary for the purpose of adjudicating the question of its legal obligation, if any, to make such payments, and recovering from your company any and all of the money paid for such reimbursement, without interest, and, further, the execution of this letter agreement and the making of any such payment by the Port Authority or the receipt thereof by your company shall not be deemed or construed as in any manner whatsoever limiting, waiving, prejudicing or affecting the legal rights or defenses, whether statutory, or otherwise, of the Port Authority or of your company, in any manner whatsoever; and
2. That your company will cause to be kept accurate records of the cost of materials furnished and labor performed in connection with such relocation of its above-mentioned facilities, which records will be subject to the inspection of the Port Authority at reasonable times.
If your company is willing to accept reimbursement under the conditions herein stated, will you be good enough to so indicate by signing and returning to the Port Authority the attached duplicate original of this letter.
 Very truly yours,
 THE PORT OF NEW YORK AUTHORITY
 By MATTHIAS E. LUKENS
 First Asst. to Executive Director
*336 HACKENSACK WATER COMPANY is willing to accept the reimbursement provided for in the foregoing letter upon the conditions therein stated.
 Dated: May , 1953 HACKENSACK WATER COMPANY
 By GEORGE H. BUCK"
Plaintiff wrote a similar letter to defendant dated July 2, 1956, in connection with the construction of a third tube for the Lincoln Tunnel, and this letter was signed by representatives of plaintiff and defendant, but the date of acceptance by defendant was filled in and dated "July 11, 1956." It is to be noted that the date of defendant's acceptance of plaintiff's letter of May 29, 1953 is not set forth in the written acceptance itself, and no evidence was adduced to show the actual date of such acceptance; also, that plaintiff's letter of July 2, 1956 was accepted nine days later, on July 11, 1956.
Subsequent to the transmittal of each of the letters to defendant, and the endorsement of copies and returns thereof by defendant to plaintiff, the work referred to in each letter was done by defendant. The actual cost of the work done under the terms and conditions set forth in the letter of May 29, 1953 was $22,720.04, and this amount was paid to defendant by plaintiff on October 20, 1954. The amount paid to defendant under and in accordance with the terms and conditions of the letter of July 2, 1956 was $329.
Prior to the work referred to in plaintiff's letter of May 29, 1953, defendant had relocated certain of its facilities at the request of plaintiff, and the relocation was done by contractors of plaintiff at plaintiff's expense or, if done by the utility, the utility was reimbursed therefor by plaintiff. The prior policy of plaintiff and the reasons therefor are set forth in a letter from plaintiff to defendant dated November 14, 1930, which reads:
"SUBJECT: Hudson River Bridge  Alterations to the Mains of the Hackensack Water Company in Fort Lee
Dear Sir:
At the request of Mr. Earl Talbot, your Vice-President, made to our Assistant Chief Engineer, Mr. Edward W. Stearns, I desire to *337 advise you that, as a matter of public policy, the Port Authority considers it more appropriate to charge the costs of any relocations of public utilities against the bridge, where they will be ultimately charged against the users of the bridge, rather than to attempt to charge them against the Public Utility Companies where they will be ultimately charged against the consumers who as a class will not necessarily be benefited by the construction of the bridge. We feel that this is in accordance with the fundamental principles of public policy and economics underlying the organization of the Port Authority."
This defendant maintains its pipes and other facilities in the public roads, streets and alleys, by virtue of R.S. 48:19-17.
Plaintiff owns and operates a total of 21 facilities, consisting of two interstate tunnels, four interstate bridges, four airports, one heliport, four piers, two motor truck terminals, one bus terminal, one freight terminal, one grain terminal and one port. However, the status and rights of the Port of New York Authority in the construction, maintenance and operation of its facilities other than the Bridge and Tunnel are not involved in this case.
Defendant's facilities, which were relocated because of alterations being made in the approaches to the Bridge, are located in Fort Lee, and defendant's facilities, which were relocated because of alterations being made in the approaches to the Tunnel, are located in Weehawken. Defendant paid excise taxes on its franchise to use public streets, etc., under N.J.S.A. 54:30A-18 et seq. Payment of such taxes to Fort Lee amounted to $9,767.19 for 1953, $11,360.07 for 1954, and a total of $323,540.77 from 1922 to 1961, inclusive, and payment of such taxes to Weehawken from 1922 through 1961 amounted to $165,669.65. Defendant also paid personal property taxes to the municipalities involved, and taxes for the privilege of doing business in New Jersey.
Defendant is a privately-owned water utility corporation which maintains its pipes and other facilities in the "public roads, streets, and alleys" by virtue of a direct legislative *338 grant of authority to do so "free from all charge to be made by any person or body politic whatsoever for such privilege," R.S. 48:19-17.
A utility company which maintains facilities in the public streets by virtue of such a grant has no vested right to maintain its facilities in any specific location in the public streets, its right being conditioned upon its obligation to remove and relocate them from one place to another at its own expense when the public convenience or necessity requires. Walker v. Township of North Bergen, 84 N.J.L. 248 (Sup. Ct. 1913); Postal Telegraph Cable Co. v. Delaware, L. & W.R.R. Co., 89 N.J. Eq. 99 (Ch. 1918), affirmed o.b. 90 N.J. Eq. 273 (E. & A. 1919); N.J. Bell Tel. Co. v. Delaware River Joint Comm., 125 N.J.L. 235 (Sup. Ct. 1940). This common law rule has been followed in New York (New York City Tunnel Authority v. Consolidated Edison Co., 295 N.Y. 467, 68 N.E.2d 445, rearg. den. 296 N.Y. 745, 70 N.E.2d 551 (Ct. App. 1946), and was applied in Port of New York Auth. v. Consolidated Edison Co., 27 Misc.2d 45, 205 N.Y.S.2d 781 (Sup. Ct. 1960), a case in which the present plaintiff sued to recover money expended by it in the relocation of facilities of Consolidated Edison Company made necessary by the construction of a New York public highway approach to the George Washington Bridge. This rule has been recognized in other jurisdictions. Delaware River, etc. v. Pennsylvania Pub. Util. Com'n, 393 Pa. 639, 145 A.2d 172 (Sup. Ct. 1958); First Nat. Bank of Boston v. Maine Turnpike Auth., 153 Me. 131, 136 A.2d 699 (Me. Sup. Jud. Ct. 1957), where numerous cases on the subject are reviewed and analyzed.
In Walker, above, the prosecutor attacked the award of a contract by the defendant for construction of a sewer under a public road. He urged that the contract was invalid because it imposed an improper burden of expense, in that it saddled the taxpayers with the cost of shifting *339 the water pipes of the Hackensack Water Company and the gas pipes of the Public Service Company. The court held:
"This contention is sound. These companies are private corporations. They exercise functions of a public nature in the distribution of water and gas to the public. This feature of their business, however, does not give them a vested right to have their pipes remain under the public highway undisturbed when the public good or necessity requires that they should be shifted or relocated. For aught that appears in this case, these companies are mere licensees. It will therefore be presumed that they laid their pipes under the public highway subject to the paramount use of such highway by the public. Under such conditions, a natural sense of justice demands that the expense of shifting and relocating the pipes should be borne by the companies owning them, and not by the taxpayers."
In Postal Telegraph Cable Co. v. Delaware, L. & W.R.R. Co., above, Postal sought to recover from the municipality the costs of changing the location of its poles in a public street made necessary by a change of grade in such street. The court held such costs were not recoverable "* * * because its [Postal's] easement is subservient to the rights of the public in the highway, from which it follows that the cost of all changes of location in the highway, made necessary to the use of the dominant right of the public in the highway, must be paid by the owners of what may be termed the subordinate easement."
In New Jersey Bell Tel. Co. v. Delaware River Joint Comm., above, the plaintiff, under objection that it was not required to relocate its facilities in the public street to make way for the construction of a subway by defendant, made the relocation at its own expense without forfeit of or prejudice to its rights. The defendant refused to make payment to plaintiff for the relocation costs incurred by defendant. Plaintiff then sought mandamus to require defendant to condemn "the easements, rights of way, uses, licenses," etc., of the plaintiff. The court denied mandamus, holding "There was no taking or acquisition of real property within the meaning of the compact, the statutes or the cases."
*340 In New York City Tunnel Authority v. Consolidated Edison Co., above, the court held the defendant utility liable for the cost of relocation of its facilities made necessary by tunnel construction by the City Tunnel Authority, holding:
"The `fundamental common-law right applicable to franchise in streets' is that a utility company must relocate its facilities in the public streets when changes are required by public necessity. * * * Although authorized to lay its pipes in the public streets, the company takes the risk of their location and is bound to make such changes as the public convenience and security require, at its own cost and charge. * * * All these cases are to the point, that these public service corporations maintain their rights in the streets, subject to reasonable regulation and control, and are bound to relocate their structures at their own expense whenever the public health, safety, or convenience requires the change to be made. * * * The rule cited is peculiarly applicable to street changes required for improved use for the streets themselves. * * * The project is, therefore, one which would have required respondents to relocate at their own expense, had it been undertaken directly by either the State or the city."
Defendant contended that the power of condemnation given to plaintiff with respect to "easements," "structures," "franchises," carries a fair intendment that the authority was to pay for the charges there in question, but the court held that this contention had no merit.
In the construction, maintenance and operation of the George Washington Bridge and the Lincoln Tunnel, the Authority is engaged in the performance of a governmental function, as opposed to engaging in a proprietary function. As to the George Washington Bridge, it was so decided in Port of New York Authority v. Consolidated Edison Co., above.
The Authority is "a joint or common agency of" the States of New York and New Jersey. Port of N.Y. Authority v. Weehawken Tp., 14 N.J. 570, 575 (1954). The compact between the states which created the Port Authority provides in Article III that the Port Authority "* * * shall be a body corporate and politic * * *," *341 R.S. 32:1-4, and in Article VI that "The port authority shall constitute a body, both corporate and politic, with full power and authority to purchase, construct, lease and/or operate any terminal or transportation facility * * *," R.S. 32:1-7. "Transportation facility" is defined in Article XXII of the said compact, R.S. 32:1-23, to include tunnels and bridges.
Plaintiff was specifically authorized and empowered in concurrent legislation by the Legislatures of New Jersey and New York, enacted to supplement the said compact, to construct, operate, maintain and own the George Washington Bridge and the necessary approaches thereto "In partial effectuation of the comprehensive plan for the development of the port of New York, and of section four thereof, adopted by the states of New Jersey and New York, by chapter nine, Laws of New Jersey, nineteen hundred and twenty-two, and chapter forty-three, Laws of New York, nineteen hundred and twenty-two * * * and of the port compact or treaty between the two states dated April thirtieth, nineteen hundred and twenty-one, authorized and approved by chapter one hundred and fifty-one, Laws of New Jersey, nineteen hundred and twenty-one, and chapter one hundred and fifty-four, Laws of New York, nineteen hundred and twenty-one * * *," R.S. 32:1-71; Laws of N.Y. 1925, c. 211, § 1.
The two legislatures further declared that
"The construction, maintenance and operation of said bridge is in all respects for the benefit of the people of the two states, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and the port authority shall be regarded as performing a governmental function in undertaking the said construction, maintenance and operation and in carrying out the provisions of law relating to the said bridge * * *" R.S. 32:1-90; Laws of N.Y. 1926, c. 761, § 7.
and
"[In] the construction, maintenance and operation of vehicular bridges and tunnels within the said Port of New York District *342 * * * the port authority shall be regarded as performing an essential governmental function * * *" R.S. 32:1-131; Laws of N.Y. 1931, c. 47, § 14.
As was held in Port of New York Authority v. Consolidated Edison Co., above, the condition for the invocation of the common law rule as to relocation of utility facilities  "public convenience or necessity"  is fully met in this case. The Authority, insofar as it acts in a governmental capacity in the construction, operation or maintenance of the Bridge and the Tunnel, has the same status as the State or a municipality to invoke the common law rule as to relocation of such facilities.
The defendant points to several enactments, such as N.J.S.A. 27:7A-7, in which our Legislature has seen fit to insert a requirement that the utility be compensated by the particular public body for the cost of relocation, and argues that these enactments show that the Legislature has adopted that requirement as a matter of public policy applicable to all public bodies such as the Authority. The common law rule applies until the Legislature provides otherwise. Port of New York Authority v. Consolidated Edison Co., above; Delaware River, etc. v. Pennsylvania Pub. Util. Com'n, above.
There is no taking of this defendant's properties for public use without compensation, contrary to Article 1, paragraph 20 of the New Jersey Constitution, and no deprivation of defendant's property without due process of law contrary to the Fourteenth Amendment to the United States Constitution. N.J. Bell Tel. Co. v. Delaware River Joint Comm., above.
There is no merit in the contention that the Authority is barred by past conduct from now seeking payment of relocation costs from defendant. The position of the Authority prior to the decision in New York City Tunnel Authority v. Consolidated Edison Co., above, as stated in its letter to defendant dated November 14, 1930, is said *343 to constitute the bar. The earlier payments by the Authority in no way create a binding obligation on the Authority to assume the costs in issue in this case. Defendant does not even suggest it has been led to act to its disadvantage by these prior payments. I adopt the language used in Port of New York Authority v. Consolidated Edison Co., above, in answer to the same argument:
"If no question of prejudice is involved, a party always has the right to change a mistaken or discretionary practice, especially after the courts have definitively declared the correct principle of law applicable thereto."
The payment of franchise taxes under N.J.S.A. 54:30A-18 does not confer any vested right to have the facilities of the utility remain in or under the public streets undisturbed. This conclusion is not changed by the added facts that the same utility paid personal property taxes to the municipalities involved and other business privilege taxes.
Defendant made no mention of any claim that plaintiff's suit for $22,720.04 covering cost of relocation in connection with the Bridge's improvement was barred by the statute of limitations, until after the trial began on February 5, 1962. At the trial, for the first time, the defendant moved to amend the pretrial order so as to include this defense, and the Authority objected. The statute of limitations is a defense which must be pleaded affirmatively. R.R. 4:8-3. Under R.R. 4:12-8, any defense not properly pleaded is waived, unless the defense be jurisdictional. The defense of the statute of limitations asserted here is a true statute of limitations and as such does not go to the jurisdiction of the court. In Edwards v. Wyckoff Electrical Supply Co., 42 N.J. Super. 236 (App. Div. 1956), in dealing with the defense of the statute of limitations, the court said that "the directions expressed in R.R. 4:8-3 should be obeyed and the requirement ought not to be relaxed except when its enforcement would in *344 a given case be inconsistent with substantial justice." There is nothing to show that it would be inconsistent with substantial justice to deny defendant's oral motion made during the trial and the motion is therefore denied. It may be noted that the money sought to be recovered in the Bridge relocation was paid by plaintiff to defendant on October 20, 1954, well within the six-year limitation of the statute; and, further, that there was no proof that the agreement set forth in plaintiff's letter to defendant of May 29, 1953, was accepted by defendant more than six years prior to the institution of this suit.
Judgment for plaintiff and against defendant for $23,049.04, without costs, is granted.