CONNECTICUT RAILWAY AND LIGHTING COMPANY ET AL.
*v.* NEW BRITAIN REDEVELOPMENT COMMISSION

HOUSE, THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued April 8—decided June 1, 1971

*Walter F. Torrance, Jr.,* with whom, on the brief, was *Kenneth J. Pocius,* for the appellants (plaintiffs).

*Archie Hovanesian,* with whom was *Steven E. Perakos,* for the appellee (defendant).

RYAN, J. On February 15, 1966, the defendant filed a statement of compensation in the Superior Court which stated that certain premises belonging to the plaintiffs were included within the area of a redevelopment plan of the defendant and set the amount of compensation to be paid for the premises at $50,000. The plaintiffs are the Connecticut Railway and Lighting Company, owner of the land in question and holder of franchises to serve the New Britain area with electric power, and The Connecticut Light and Power Company, lessee of the land and franchises. They appealed to the Superior Court from the statement of compensation and the case was referred to a state referee. From the referee's judgment making an award of $68,000 the plaintiffs have appealed to this court.

The following facts were found: The property taken by the defendant consisted of a parcel of land on the south side of Church Street and the east side of Herald Square in the city of New Britain, on which was located an electric substation and switching station comprised of a one-story-and-basement brick, steel and concrete building and various items of electrical equipment. The property was known as the Church Street substation. For the purposes of this matter the parties and the state referee considered the interests of the plaintiffs to be one and the same. The fair value of the land and buildings on the date of the taking was $68,000, and none of the parties disputes the award of this amount for

the land and building. The Church Street substation was a portion of the plaintiffs' facilities used to distribute electric power in the area. Electric power is generated at generating stations and transmitted at high voltages to bulk power stations near the areas where the power is to be consumed. At bulk power stations the voltage is reduced and the electric power is further transmitted to smaller substations at the location of the load to be served. At these smaller substations the voltage of the electric power is further reduced, and it is distributed through overhead or underground electric lines to the consumers of electric power. In New Britain the Black Rock substation is the bulk power station, and the Church Street substation was one of a dozen or more substations receiving power from the Black Rock substation. The Church Street substation supplied electric power to the downtown area of New Britain and to large industrial plants located in that area and all of such power passed through the substation. Electric power reached the Church Street substation from the Black Rock station by means of four 15,000-volt underground electric lines. From the Church Street substation electric power was distributed to customers by means of underground electric lines, some operating at 15,000 volts and some at 2300 volts. In 1966, in connection with the taking, the defendant commission ordered the plaintiffs to vacate the Church Street substation. If the plaintiffs had merely vacated the substation they would no longer have been able to serve the customers who had received electric power through the substation. In order to continue to serve such customers, it was necessary for the plaintiffs to make provision for the flow of electric power from the Black Rock station to the electric lines which had

formerly received electric power through the Church Street substation. The plaintiffs did, in fact, install new facilities in the highways so that customers who had formerly received electric power through the Church Street substation could continue to receive electric power. The method adopted by the plaintiffs to serve such customers was the most economical and best engineered method to serve them. In addition to the facilities for distributing electric power to its customers, the Church Street substation contained equipment which controlled all of the street lights in downtown New Britain. As a result of the taking of the substation it was necessary for the plaintiffs to construct new facilities elsewhere to perform the same function.

To the extent that existing cables in the highways could no longer be used to serve customers because of the taking of the substation, they were either left in the ground or removed and sold for scrap. The cost to the plaintiffs to install the facilities necessary for them to continue electric service to customers formerly served through the Church Street substation and to install street lighting control equipment to replace that formerly in the Church Street substation was $37,914.80. In addition, the plaintiffs expended $1390.67 to remove underground cable which could no longer be used, which cable was sold for $10,120.60, leaving a net credit for scrap cable of $8729.93. The net cost of the project to the plaintiffs was $29,184.87. This was the fair and reasonable cost for the installation of facilities necessary to continue electric service as it existed prior to the taking of the Church Street substation. At no time did the defendant commission order the plaintiffs to remove any of their facilities from the New Britain streets or invoke § 8-133a of the General Statutes.

No mention was made in the certificate of taking or in the appeal from the statement of compensation of the underground electric lines and other facilities for the replacement of which the plaintiffs now claim damages.

The referee concluded that the condemnation was a complete taking of the Church Street substation only; that the fact that the underground cables and appurtenances were rendered obsolete or valueless to the plaintiffs created a business loss, not compensable under condemnation proceedings; and that just compensation for the taking of the substation does not include the cost of restoring the electric distribution system to its functional condition prior to the taking.

The basic claim of the plaintiffs is that when a portion of an electric distribution system is taken in condemnation proceedings, the cost of restoring the portion not taken to its functional condition as it existed prior to the taking, is a compensable element of damages.[1] It is their contention that the taking of a tract of land on which are located facilities which are a part of an electric system supplying power to an area of the city of New Britain requires compensation not only for the value of the real estate taken but also for the cost of restoring the electric system so that the plaintiffs can continue to furnish electric power to its customers. While the taking by the defendant was of real property only, and no personal property or equipment was in-

---

[1] The cost of moving certain of its electrical equipment from the subsection was paid to the plaintiffs by the defendant. Although nothing appears in the record concerning this, the parties agreed in brief and argument that this had occurred. Moving costs, however, are not involved in this appeal and it is clear that these costs were not paid in lieu of other costs for which the plaintiffs make claim in this appeal.

volved, the plaintiffs urge that this necessitated alterations to their remaining facilities which constituted a partial taking of their electric system for which severance damages should be awarded. There is no previous decision by this court involving the taking of a portion of an electric distribution system. "[W]here part of an owner's tract is taken by an exercise of the power of eminent domain the owner is not confined to recovery for the value of the part taken only, but is entitled to recover also for the damage thereby visited upon the area remaining in his title, possession and use." 4 Nichols, Eminent Domain (3d Ed.) § 14.2. Where a portion of a tract of land is taken for a public improvement, the method of measuring damages is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter. *Andrews* v. *Cox,* 129 Conn. 475, 478, 29 A.2d 587; see *Seferi* v. *Ives,* 155 Conn. 580, 582, 236 A.2d 83; *Housing Authority* v. *Lustig,* 139 Conn. 73, 75, 90 A.2d 169.

The plaintiffs cite the case of *Puget Sound Power & Light Co.* v. *Puyallup,* 51 F.2d 688 (9th Cir.), in support of their position. In that case the plaintiffs were the owners of a large electric generating and distributing system, of which the system in the city of Puyallup was a small but integral part. The entire system within the city was condemned. The plants and facilities acquired consisted of a substation, transformers, switches, motors, meters, machinery and equipment, distribution lines, poles, wires, lamps, all appurtenances, contracts, franchises, rights and privileges necessary and convenient for the distribution of electricity or relating thereto. The owners were held entitled to damage to their remaining property due to severance.

The case at bar is clearly distinguishable. No personal property or equipment of any kind was taken. There was a complete taking of the real estate of the plaintiffs and nothing more. "Charters, franchises, statutory grants and permits affording the use of public ways to utility locations are subservient, expressly or by implication, in the exercise of governmental functions, to public travel and to the paramount police power and relocation of utility facilities in public streets or ways are at utility expense, a common law liability unless abrogated by the clear import of the language used in a particular statute." 4 Nichols, op. cit. § 15.22, and cases cited. The obligation of the state to pay the cost of relocation or the value of retired facilities did not exist at common law. *New Rochelle Water Co.* v. *State,* 10 N.Y.2d 287, 177 N.E.2d 771. The fundamental common-law right applicable to franchises in streets is that a utility company must relocate its facilities in the public streets when changes are required by public necessity at its own expense. See *Washington Natural Gas Co.* v. *Seattle,* 60 Wash. 2d 183, 373 P.2d 133; *Delaware River Port Authority* v. *Public Utility Commission,* 393 Pa. 639, 645, 145 A.2d 172; *Transit Commission* v. *Long Island R. Co.,* 253 N.Y. 345, 351, 353, 171 N.E. 565; *Port of New York Authority* v. *Hackensack Water Co.,* 73 N.J. Super. 332, 179 A.2d 778; *First National Bank of Boston* v. *Maine Turnpike Authority,* 153 Me. 131, 136 A.2d 699.

In the District of Columbia, in a case very similar to the present case, the government condemned land and took the entire lot on which an electric power company had erected a substation. The company contended that its distribution system consisting of conduits, cables and facilities lying in the public

streets was taken within the meaning of the constitution and that it was entitled to just compensation therefor. The court held that the permission granted to lay cables in the streets amounted to a mere license revocable at will to use the streets for certain purposes, and the personal property placed therein by the company remained personalty; that the impairment of the company's distribution system was merely incidental to the direct taking involved in the acquisition of its real estate; and that the further contention of the defendant that it was entitled to show the cost of relocating the electrical machinery, conduits, cables and facilities could not be sustained since it is generally held that the cost of relocating personal property on land taken under the power of eminent domain is not a proper element of damage. *Potomac Electric Power Co.* v. *United States,* 85 F.2d 243, 249 (D.C. Cir.), cert. denied, 299 U.S. 565, 57 S. Ct. 27, 81 L. Ed. 416.

There can be no doubt that in the absence of express statutory authority a utility is not entitled to reimbursement for its expense in relocating its facilities located in public highways. *New York City Tunnel Authority* v. *Consolidated Edison Co. of New York,* 295 N.Y. 467, 68 N.E.2d 445. Section 8-133a of the General Statutes (Rev. to 1966) provides that "[w]henever a redevelopment agency determines that the closing of any street or public right-of-way is provided for in a redevelopment or renewal plan adopted and approved in accordance with section 8-127, or where the carrying out of such a redevelopment or renewal plan, including the construction of new improvements, requires the temporary or permanent readjustment, relocation or removal of a public service facility from a street or public right-of-way, the agency shall issue an appro-

priate order to the company owning or operating such facility, and such company shall permanently or temporarily readjust, relocate or remove the same promptly in accordance with such order, provided an equitable share of the cost of such readjustment, relocation or removal, including the cost of installing and constructing a facility of equal capacity in a new location, shall be borne by the redevelopment agency." The statute provides that such equitable share shall be 50 percent of such cost after certain deductions as provided therein. This statute was not applicable in the present case and was not invoked by either of the parties. The plaintiffs do not suggest that there is any other statute applicable to the facts of the case at bar.

There is no error.

In this opinion the other judges concurred.